Prasithi **SILPACHARIN,**
**Plaintiff–Appellant,**

v.

**METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY, Defendant–Appellee.**

Court of Appeals of Tennessee,
Middle Section, at Nashville.

June 22, 1990.

Application for Permission to Appeal Denied by Supreme Court
Oct. 1, 1990.

Joseph H. Johnston, Nashville, for plaintiff-appellant.

Susan Short Jones, Director, Dept. of Law of the Metropolitan Government of Nashville and Davidson County, William Michael Safley, Metropolitan Atty., Nashville, for defendant-appellee.

## OPINION

LEWIS, Judge.

This is an employment discrimination action brought pursuant to the Tennessee Human Rights Act, Tenn.Code Ann. § 4–21–101 *et seq.*, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*

Following a bench trial the court dismissed plaintiff's suit for failure to show that he was rejected for promotion and/or transfer[1] "under circumstances which give rise to an inference of unlawful discrimination." The trial court further held that even if plaintiff had carried his burden of proof of showing a *prima facie* case of discrimination, the "defendant has shown a legitimate non-discriminatory reason for the decision that plaintiff has not shown to be pretextural."

The pertinent facts are as follows:

Plaintiff is a fifty-five year old, naturalized American citizen of Asian descent. He has been employed by the Metropolitan Board of Education since 1974, first as a laborer and then as a Bookbinder I.

Plaintiff had previously worked in Bangkok, Thailand, for the U.S. Agency for International Development for fourteen years prior to coming to the United States. As an administrative assistant in the Thai-American audio visual service section, he gained experience using mimeograph machines and observed printing equipment being used during this employment. His job description reflects that in the 1970s plaintiff was responsible for "supervision of reproduction services" and his job required a "working knowledge of machines used."

In his work as a Bookbinder I, plaintiff had daily contact with the printing department. In 1982, he made his first application for a transfer to the printing department as a Printer I. Plaintiff testified that when he submitted his application for transfer in 1982, he was advised by Mrs. McClain, who is black and the personnel clerk in the Department of Classified Per-

sonnel, that he could not do that type work. In 1984, plaintiff learned that Mr. Robert Tucker, director of the printing department, was going to retire and that a vacancy for a Printer I position might come open in that department. Mr. Tucker was familiar with the quality of plaintiff's work as a Bookbinder I and knew of his previous interest in printing. Mr. Tucker advised plaintiff to renew his application for transfer. Mr. Tucker also made known his recommendation of plaintiff to Mr. Aubrey Moore, a black male printer who was to become acting director of the printing department upon Mr. Tucker's retirement in June 1985. Plaintiff submitted a second application for transfer to the printing department at the position of Printer I to Mr. Dave Thompson, an assistant in the department of classified personnel. He told Mr. Thompson of his prior work experience while he was in Thailand.

Plaintiff testified that because of Mrs. McClain's comments in 1982 that he could not do that type work, he enrolled in a printing course at Whites Creek High School in 1985. He attended five sessions and was able to determine that the printing presses used by the printing department were similar in operation to those he had observed in Thailand. When he was satisfied he would have no difficulty in learning to operate those printing presses, he dropped the course. At the time plaintiff made his application for transfer to Printer I, three others also applied; Lisa Phelps, a black female in her mid–20's; Richard Hoss, a white male approximately fifty-four years old, and Frank Pennington, a forty-one-year-old black male. Mr. Pennington, an employee of the mail and delivery section, began his employment with the school system on 10 September 1973. He had worked continuously except for a six-and-a-half-month period in 1977–78.

Plaintiff and Mr. Pennington were selected by the classified personnel department as the two best candidates. Their names were submitted to Aubrey Moore, Director

---

1. The record is not clear regarding whether this was a promotion or a transfer.

of Printing.[2]

The job of Printer I requires six months experience in the operation of printing presses and duplicating machines. The record is clear that neither plaintiff nor Mr. Pennington could meet the six months requirement.

Mr. Moore had been familiar with both plaintiff and Mr. Pennington for an extended period of time, knew what kind of work both men could do, and was aware that each had expressed long-term interest in the job as a Printer I. He rated both plaintiff and Mr. Pennington as average and indicated he felt each would make a good employee for the department. After being informed by his supervisor, Eugene Dietz, that he must select one individual for the job, Mr. Moore recommended Frank Pennington.

Mr. Moore made his recommendation in favor of Mr. Pennington without interviewing either Mr. Pennington or plaintiff. The interview forms of both applicants contained no information under the section entitled "Work History." So far as the record is concerned, Mr. Pennington's personnel file did not show that he had had any prior experience in printing.

While plaintiff's supervisor in the book binding department stated that plaintiff did a "perfect job, a good job," Mr. Moore rated him as "average" with respect to his capabilities in performing the job of Printer I.

Mr. Moore had never seen the job description for Printer I prior to making his recommendation in favor of Mr. Pennington. He therefore did not take into account the requirement that the applicant must have six months of training or equivalent experience. While plaintiff argues that his personnel file indicates that he had the equivalent experience necessary to meet the job requirement for Printer I, the record does not bear this out.

The record also shows that Mr. Pennington had worked some overtime hours during the Summer of 1985 in the printing department. However, nothing in the record shows that the time he spent in the printing department amounted to any experience on the printing press.

In April 1986, Frank Pennington, who was then thirty-nine years old, was selected to fill the Printer I vacancy.

Plaintiff, after hearing that Pennington had been selected to fill the vacancy, complained to Mr. Deitz. Plaintiff testified that Mr. Deitz told him he had to have an inside track in order to get that job. However, as will be discussed later, the record does not support this contention.

In 1976, the Metropolitan Government of Nashville and Davidson County, by executive order of Mayor Richard Fulton, authorized an affirmative action plan which in part is as follows:

> Affirmative and direct action is required to make equal employment a reality for minority and female persons. To implement this policy, therefore ... this Affirmative Action Plan [is] designed to increase the number and representation of affected and/or under-represented groups in *all departments* and *job classifications* throughout the Metropolitan School System. [emphasis added]

[Id. p. 2]

> The Personnel Department shall be responsible for analyzing the School System's work force, detailing instances of minority promotion, demotion and review of job criteria.

[Id. p. 4]

> The major objective of the Affirmative Action Plan is to have appropriate minority and female representation in the various departments of the Metropolitan School System. The Metropolitan School System will continue to employ minorities, which at present is above the actual ratio of the minority populations of the Metropolitan Nashville Community.

[Id., pp. 13, 14]

---

**2.** Mr. Pennington submitted his first application for transfer to a Printer I position on 11 July 1974, a second on 19 June 1975, and a third on 18 July 1985. Plaintiff initially submitted a transfer request on 12 June 1982. He again submitted an application in 1984 which, for some reason, was not in his file, and again in 1985.

The record shows that the percentage of black employees in the general work force is approximately twenty percent and the percentage of black employees in the work force of the Metropolitan school system is over thirty percent.

There are seven employees in the printing department, five blacks and two whites. There are no Asian or other foreign nationals employed in the printing department. The printing department jobs are considered good jobs and no one has ever quit his or her job in the printing department.

Plaintiff's first issue is "[w]hether Plaintiff–Appellant established, by the preponderance of the evidence, a *prima facie* case of employment discrimination based upon race, age and national origin."

■ Plaintiff has the burden of presenting evidence to establish a *prima facie* case of discrimination. If the plaintiff establishes a *prima facie* case, then the burden of proof shifts to the defendant to rebut the presumption of discrimination by articulating a legitimate nondiscriminatory reason explaining why plaintiff was rejected for promotion or transfer. If the defendant employer satisfies the burden of articulating a legitimate non-discriminatory reason for plaintiff's rejection, then the burden of proof shifts again to plaintiff to persuade the court that the defendant employer's reason is pretextual or that the defendant employer's proffered explanation is not worthy of belief. *Texas Dept. of Comm. Affairs v. Burdine*, 450 U.S. 248, 256, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1981).

■ A violation of the employment discrimination statute applicable to the instant case may be established if race, age or national origin was at least a "factor," a "'but-for' cause" in the decision. *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 282 n. 10, 96 S.Ct. 2574, 2580 n. 10, 49 L.Ed.2d 493 (1976).

In order to show a *prima facie* case of discrimination arising out of the denial of a transfer promotion, the plaintiff must show that

(1) he applied for an available position; (2) he was qualified for the position; and (3) he was rejected under circumstances which give rise to an inference of unlawful discrimination in that his failure to be hired, transferred or promoted is more likely than not based on considerations of impermissible factors."

*Coe v. Yellow Freight System, Inc.*, 646 F.2d 444, 448–49 (10th Cir.1981).

■ Here, plaintiff showed that he applied for an available position, *i.e.*, the position of Printer I. He has failed to show that he was qualified for the position since one of the requirements was six months experience. However, Mr. Pennington, who was selected for the position, also failed to show this qualification. Under the circumstances, plaintiff has met the first and second elements of a *prima facie* case.

■ Plaintiff also has shown that he "was rejected under circumstances which gave rise to an inference of unlawful discrimination." Plaintiff is of Asian descent. Ms. McClain, the secretary in the personnel department who is black, informed him in 1982 when he submitted his first application for transfer to a Printer I position that he could not do that type job. He applied the second time in 1984, and this application was never placed in plaintiff's personnel file. The acting director of printing, Mr. Moore, who is black, filled out the interview forms for both plaintiff and Mr. Pennington, who is black, and did not interview either plaintiff or Mr. Pennington prior to filling out the required interview forms. Within the printing department, there is a racial imbalance, five blacks and two whites. This racial imbalance was perpetuated when Mr. Pennington was transferred.

Defendant has cited several cases in support of its argument that plaintiff cannot show discrimination since both plaintiff, who is of Asian descent, and Mr. Pennington, who is black, are both members of a protected group. However, each of the cases cited by defendant was decided prior to *St. Francis College v. Al-khazraji*, 481 U.S. 604, 107 S.Ct. 2022, 95 L.Ed.2d 582

(1987). The Court in *St. Francis College* agreed with the Third Circuit that discrimination under 42 U.S.C. § 1981 " 'at a minimum,' reaches discrimination against an individual 'because he or she is genetically part of an ethnically and physiognomically distinctive subgrouping of *homo sapiens.*" 481 U.S. at 613, 107 S.Ct. at 2028 (emphasis in original).

Here, the plaintiff is ethnically and physiognomically distinctive as an Asian from Thailand as opposed to Mr. Pennington, a black whose ancestry can be traced to Africa. Both plaintiff and Mr. Pennington are members of a protected class. However, they are members of separate and distinct protected classes. *See Walker v. Secretary of the Treasury,* 713 F.Supp. 403 (N.D.Ga.1989).

We next must determine whether or not the defendant has established by a preponderance of the evidence that the reason proffered by the defendant for its employment decision was a legitimate non-discriminatory reason and, if so, whether the plaintiff has shown that the reasons proffered by the employer were a mere pretext for employment discrimination.

When the plaintiff employee has established a *prima facie* case of discrimination, then the burden shifts to the defendant employer.

The burden that shifts to the defendant, therefore, is to rebut the presumption of discrimination by producing evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason. The defendant need not persuade the court that it was actually motivated by the proffered reasons.... It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff.

... If the defendant carries this burden of production, the presumption raised by the prima facie case is rebutted, and the factual inquiry proceeds to a new level of specificity. Placing this burden of production on the defendant thus serves simultaneously to meet the plaintiff's prima facie case by presenting a legitimate reason for the action and to frame the factual issue with sufficient clarity so that the plaintiff will have a full and fair opportunity to demonstrate pretext.

*Texas Dept. of Comm. Affairs v. Burdine,* 450 U.S. at 254–56, 101 S.Ct. at 1094–95 (1981) (footnotes and citations omitted). *See also Fields v. Bolger,* 723 F.2d 1216 (6th Cir.1984).

■ The record in this case shows that there is very little, if any, difference in the qualifications of plaintiff and Mr. Pennington to fill the position of Printer I. Both plaintiff and Mr. Pennington have worked for the Metropolitan public school system for several years. Mr. Pennington has been with the school system for slightly more time than the plaintiff. However, plaintiff has more continuous experience since Mr. Pennington left his employment for a period of approximately six months at one time. Both plaintiff and Mr. Pennington had expressed a long-term interest in the position of Printer I. Mr. Pennington first expressed interest on 11 July 1974 and has since that time expressed interest periodically. Plaintiff's first application for the job of Printer I was 12 June 1982. He has since that time continuously expressed interest in the position.

The acting director Aubrey Moore considered both plaintiff and Mr. Pennington to be good candidates for the position. Mr. Moore made his evaluation and submitted it to Mr. Deitz. Mr. Moore did not make a recommendation at that time. Mr. Deitz told Mr. Moore that he had to choose one of the two individuals for the job. It was not until then that Mr. Pennington was recommended. He made that recommendation on the basis of Mr. Pennington's long interest in the printing department plus the fact that Mr. Pennington had worked for Mr. Moore for some four or five weeks during the previous summer and Mr. Moore was "impressed with the way he handled things in the printing department."

We are of the opinion that the defendant has established by a preponderance of the evidence that there was a legitimate non-

discriminatory reason for its employment decision.

The burden then shifts to the plaintiff to show that the reason proffered by the employer was a mere pretext for employment discrimination.

The burden is on the plaintiff to "prove by a preponderance of the evidence that the reason given by the employer was a mere pretext for what was ... a discriminatory purpose." *Bruce v. Western Auto Supply Co.*, 669 S.W.2d 95, 97 (Tenn.App. 1984) (citations omitted).

Plaintiff must show more than the fact that he "belongs to a racial minority, that he was qualified for his position, and that he was [rejected]." *Shah v. General Electric Co.*, 816 F.2d 264, 269 (6th Cir.1987) (quoting *Texas Dept. of Comm. Affairs v. Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093). Such proof, "without more, simply fails to present evidence that the plaintiff 'was rejected under circumstances which give rise to an inference of unlawful discrimination.'" *Id.*

 Plaintiff also argues that there was nepotism involved in the transfer of Mr. Pennington. To assign jobs partly on the basis of nepotism is a violation of Title VII. *See Bonilla v. Oakland Scavanger Co.*, 697 F.2d 1297, 1303 (9th Cir.1982), *cert. denied*, 467 U.S. 1251, 104 S.Ct. 3533, 82 L.Ed.2d 838 (1984). However, our review of this record fails to show that the relationship of Mr. Moore and Mr. Pennington's wife raises any inference of nepotism. Nepotism is the "[b]estowal of patronage by public officers in appointing others to positions by reason of blood or marital relationship to appointing authority." *Black's Law Dictionary* 1191 (Rev. 4th ed. 1968). There is no showing that Mr. Pennington is related by blood or marriage to anyone in the chain of command that made the selection.

Plaintiff also alleges that Eugene Deitz told him "he needed an inside track to get the job." The record does not support this insistence. Mr. Deitz told plaintiff that Mr. Pennington had previously volunteered to do extra work in the printing shop during a time of heavy overload and that, because of this extra effort on the part of Mr. Pennington, his work had been observed in the print shop. Mr. Deitz told plaintiff that "if he had an interest in doing so, that it seemed it couldn't hurt, it might help."

Plaintiff also argues that he had more seniority with the Metropolitan Board of Public Education. Plaintiff was hired 26 August 1974. Mr. Pennington began his employment 10 September 1973. On 1 July 1977, Mr. Pennington left his employment with the school system for approximately six months and returned on 16 January 1978. Plaintiff did have longer continuous service. However, Mr. Pennington had more total time.

We are of the opinion after a full and complete review of this record that defendant employer has met its burden by "produc[ing] evidence of legitimate non-discriminatory reasons," *Bruce v. Western Auto Supply Co.*, 669 S.W.2d at 97, and that plaintiff has failed to show that those reasons were "mere pretext" for what was really a discriminatory purpose. *Id.*

It therefore results that the judgment of the trial court is affirmed with costs assessed to the plaintiff and the cause remanded to the trial court for the collection of costs and any further necessary proceedings.

TODD, P.J., and KOCH, J., concur.