# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

## OLLIE SPEAKMAN, JR. v. ADA FERRELL GARDEN APARTMENTS, ET AL.

**Direct Appeal from the Circuit Court for Coffee County**
**No. 28,210      L. Craig Johnson, Judge**

---

### No. M1999-00509-COA-R3-CV - Decided May 30, 2000

---

Ollie Speakman, Jr., an employee of Ada Ferrell Garden Apartments, appeals the summary judgment granted by the Circuit Court in favor of his employer. Mr. Speakman filed a complaint against his employer after he was discharged alleging that his employer discharged him in retaliation for filing a worker's compensation claim. The employer filed a summary judgment motion, which was granted by the Circuit Court. We affirm the Circuit Court and remand for collection of costs.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded**

GODDARD, P.J., delivered the opinion of the court, in which FRANKS, and SWINEY, JJ. joined.

Russell L. Leonard, Winchester, Tennessee, for the appellant, Ollie Speakman, Jr.

Russell D. Hedges, Tullahoma, Tennessee, for the appellees, Ada Ferrell Garden Apartments and Morris Property Management, Inc.

### OPINION

The Appellant, Ollie Speakman, Jr. was employed as a maintenance supervisor by the appellees, Ada Ferrell Garden Apartments and Morris Property Management, Inc., from July 1992 through January 1993. In late November 1992, Mr. Speakman fell down a flight of stairs at Ada Ferrell while posting notices on tenants' doors. He filed a claim for worker's compensation. In January 1993, the resident manager of Ada Ferrell, Elizabeth Stubblefield, terminated Mr. Speakman's employment. Mr. Speakman filed a complaint in the Circuit Court of Coffee County alleging that he was terminated in retaliation for filing a worker's compensation claim. The appellees filed a motion for summary judgment, which was granted by the Circuit Court. Mr. Speakman argues on appeal that the trial court erred in granting summary judgment because there are material facts in dispute.

The parties and their witnesses testified by deposition as follows:

## OLLIE SPEAKMAN, JR.

He was hired as a maintenance supervisor for Ada Ferrell Garden Apartments on July 20, 1992. He signed a job description sheet of a maintenance supervisor as a condition of employment. As part of his job, he was required to have some knowledge of heating and air conditioning. His field of expertise is electrical, such as repairing light switches. Prior to his employment with Ada Ferrell Garden Apartments, he had performed plumbing work, roof work, carpentry and appliance work. Most of his work experience was acquired at Tullahoma Housing. He has an electrical contractor's license from the State of Tennessee.

As maintenance supervisor, he was responsible for his own work and the work of his assistant, Tom Bennett. On October 30, 1992, Ms. Stubblefield evaluated his job performance. She told Mr. Speakman that he needed to improve his job performance in certain areas. Mrs. Lynn, the property manager, said he might receive a raise after 90 days, but he did not receive a raise after this evaluation. Mr. Speakman believed that he did not receive a raise because his beginning pay rate was too high.

On November 25, 1992, the day of the worker's compensation injury, Mr. Speakman and Mr. Bennett were on a general cleanup assignment and posting handouts on tenants' doors. After posting handouts on two apartment doors at approximately 8:15 a.m., Mr. Speakman fell down a flight of stairs sustaining a lower back injury. At approximately 8:30 a.m., Mr. Speakman informed Ms. Stubblefield, the resident manager of Ada Ferrell Garden Apartments, about his fall. He filled out paperwork describing the injury and gave the paperwork to Ms. Stubblefield. The next morning, Mr. Speakman's son took him to the emergency room. Mr. Speakman called work the day after his emergency room visit and talked to Ms. Stubblefield or Tonya, the assistant manager. He asked for information on a worker's compensation doctor. After he was given a list of doctors, he made an appointment with Dr. George Lien in Murfreesboro. Dr. Lien told Mr. Speakman to wear a back brace. He wore the back brace during the rest of his employment. His ability to work was affected slightly because he had to perform tasks more slowly than before his injury. He has been released from treatment.

When he applied for unemployment benefits, he did not state that the reason for his being fired was for filing a worker's compensation claim. He copied the reasons for his discharge from his separation slip. However, he believed he had been fired for filing the worker's compensation claim because they were slow in giving him doctors' names for his injury and he refused to lift a washing machine due to his injury. In order to repair the washing machine, it needed to be lifted by two people. He could not assist Mr. Bennett in lifting the washing machine. An outside contractor, Larry Warren, was hired to repair the washing machine.

After his injury, he noticed a difference in his relationship with Ms. Stubblefield. He noticed more "pressure" and less conversations between them. When he started working there, he was not told to turn in completed work orders every evening. Before he was injured, he was told to turn in work orders at least once a week on Friday evening. Ms. Stubblefield wanted Mr. Speakman to clean city ditches near the apartment property, but Mr. Speakman believed the ditches were part of the city's responsibility. He cleaned the ditches anyway. Because of his back brace, Mr. Speakman refused to scrub the floors in the community room and laundry room on his hands and knees. Prior to his accident, Ms. Stubblefield had not asked him to clean those floors on his hands and knees.

In December 1992, Mr. Speakman was behind schedule on the work orders. Ms. Stubblefield continually complained to Mr. Speakman that he failed to keep the shop area clean. In the December 18, 1992 employee review, Mr. Speakman was informed that the inventory of the shop and barn through December 31 was required to be completed by January 8, 1993. He did not receive the proper forms for inventory counting until January 6, 1993. Mr. Speakman refused to sign the review because he "could not personally guarantee anything in the future."

## ELIZABETH STUBBLEFIELD

She is the resident manager of Ada Ferrell Garden Apartments. Her employment began in 1987. Morris Property Management, Inc. is the company that manages Ada Ferrell Garden Apartments. Mr. Speakman was hired on July 20, 1992 by Lynn Rice. Lynn Rice was the property manager from Morris Property Management, Inc. Mr. Speakman was employed through Morris Property and his checks were signed by Harold Morris, the owner of Morris Property. The decision to terminate anyone was a joint decision by the resident manager and property manager. Ms. Stubblefield always sought approval from the property manager in her decisions.

A new Morris Property manual was issued in January 1993 which outlined disciplinary actions. When an employee needed disciplinary action, the 1993 manual required the resident manager to talk to the employee for the first violation and then give the employee a written violation slip for a second violation. The written warning was accompanied by time off without pay.

Mr. Speakman was hired as the maintenance supervisor. His job responsibilities included insuring that the grounds were presentable on a daily basis, performing work orders in a timely and correct manner, and cleaning and repairing units in a timely manner for new tenants. The term used to describe the duty of cleaning and repairing a unit for a new tenant is turnkey. A turnkey involves cleaning, painting and maintenance of a unit in order to rent the unit. A turnkey should be completed in three days.

Prior to Mr. Speakman's evaluation on October 30, 1992, Ms. Stubblefield was displeased with Mr. Speakman's job performance in completing work orders in a timely manner and returning the work order slip to the office in a timely manner. As soon as a work order was completed, the work order slip should be returned to the office. Mr. Speakman failed to return work orders when they were completed.

Mr. Speakman told Ms. Stubblefield on the day of his injury that he had fallen down a flight of stairs and may have injured his back. She asked him if he needed to see a doctor. He saw a doctor the next day and she filled out an injury report on the following day. Mr. Speakman did not miss any days of work due to his injury. Mr. Speakman provided Ms. Stubblefield with the doctor's statements which restricted him from lifting anything. She noticed no change in her attitude toward Mr. Speakman after his injury.

When Ms. Stubblefield evaluated Mr. Speakman on October 30, 1992, she discussed the areas in which he needed improvement with him. On the evaluation, Ms. Stubblefield marked most areas as satisfactory and two as excellent. She did not mark any areas as unsatisfactory. Ms. Stubblefield testified that she was not satisfied by Mr. Speakman's attitude in accepting work assignments, even though she marked the evaluation as satisfactory in that category. Between October 30, 1992 and November 25, 1992, Ms. Stubblefield asked Mr. Speakman to improve his performance in keeping the grounds clean, work orders and turnkey reports. She discussed these improvements with Mr. Speakman, but she did not issue an oral or written warning. Ms. Rose, the

property manager, visited Ada Ferrell on December 17, 1992, and inspected some turnkey units. Ms. Rose and Ms. Stubblefield discussed problems with Mr. Speakman's job performance. Ms. Stubblefield gave Mr. Speakman a written warning on December 18, 1992 which detailed problems as far back as September 1992.

THOMAS BENNETT

He was supervised by Mr. Speakman. Prior to Mr. Speakman's injury, Mr. Bennett never heard Ms. Stubblefield complain about their job performance. Mr. Bennett assisted Mr. Speakman in performing certain duties after the injury. Mr. Speakman could not move in certain ways or lift heavy objects. After Mr. Speakman's injury, Mr. Bennett noticed a change in Ms. Stubblefield. She began complaining about Mr. Speakman's job performance and asking him to perform tasks which she had never asked him to perform before his injury. Specifically, Ms. Stubblefield wanted Mr. Speakman and Mr. Bennett to clean the laundry room floor with a scraper on their hands and knees. Regarding the turnkey units, Ms. Stubblefield inspected the units after Mr. Speakman and Mr. Bennett had completed their tasks and she would add new tasks to their list of duties to complete the turnkey unit. For example, Ms. Stubblefield would request that an air conditioning filter be replaced or cleaned again when it had already been replaced or cleaned. Ms. Stubblefield wanted Mr. Speakman and Mr. Bennett to perform different tasks at the same time instead of completing each task as a team.

ANALYSIS

Our standard of review for a trial court's action on a summary judgment motion is *de novo* without a presumption of correctness because our inquiry is purely a question of law. Carvell v. Bottoms, 900 S.W.2d 23, 26 (Tenn. 1995). An evaluation of a summary judgment motion must address these questions: "(1) whether a factual dispute exists; (2) whether the disputed fact is material to the outcome of the case; and (3) whether the disputed fact creates a genuine issue for trial." Byrd v. Hall, 847 S.W.2d 208, 214 (Tenn. 1993). In a motion for summary judgment, the evidence must be viewed in a light most favorable to the nonmoving party, and all reasonable inferences must be made in the nonmoving party's favor. Byrd, 847 S.W.2d at 210. Summary judgment is appropriate if both the facts and conclusions to be drawn from the facts permit a reasonable person to reach only one conclusion. See Guiliano v. Cleo, Inc., 995 S.W.2d 88, 94 (Tenn. 1999).

Tennessee case law has described the employment-at-will doctrine as allowing the employer or the employee to terminate the employment relationship at any time for any reason. See Harney v. Meadowbrook Nursing Center, 784 S.W.2d 921, 922 (Tenn. 1990); Watson v. Cleveland Chair Co., 789 S.W.2d 538, 540 (Tenn. 1989). Tennessee courts have recognized exceptions to the employment-at-will doctrine:

> [A]n employee-at-will generally may not be discharged for attempting to exercise a statutory or constitutional right, or for any other reason which violates a clear public policy which is evidenced by an unambiguous constitutional, statutory, or regulatory provision.

Stein v. Davidson Hotel Co., 945 S.W.2d 714, 717 (Tenn. 1997) (citations omitted).

-4-

Examples of public policy for which an employee-at-will may not be discharged are filing a worker's compensation claim, refusing an employer's demand to commit perjury, obeying a lawful subpoena, participating in jury duty and refusing to falsify records. See Chism v. Mid-South Milling Co., 762 S.W.2d 552, 556 (Tenn. 1988) (citations omitted). To establish a cause of action for discharge in retaliation for filing a worker's compensation claim, the Tennessee Supreme Court stated four elements that a plaintiff must prove and described the plaintiff's burden of proof as follows:

Based on the principles stated in *Clanton v. Cain-Sloan Co., Chism v. Mid-South Milling Co., Inc.,* and *Johnson v. Saint Francis Hosp., Inc.*, the following elements are found to establish a cause of action for discharge in retaliation for asserting a worker's compensation claim: (1) The plaintiff was an employee of the defendant at the time of the injury; (2) the plaintiff made a claim against the defendant for workers' compensation benefits; (3) the defendant terminated the plaintiff's employment; and (4) the claim for workers' compensation benefits was a substantial factor in the [defendant's] motivation to terminate the [plaintiff's] employment.

The burden of proof rests, of course, upon the plaintiff to prove the elements of the cause of action, including a causal relationship between the claim for workers' compensation benefits and the termination of employment. Proof of discharge without evidence of a causal relationship between the claim for benefits and the discharge does not present an issue for the jury. However, proof of a causal link between the claim for benefits and the employee's discharge imposes upon the employer the burden of showing a legitimate, non-pretextual reason for the employee's discharge.

Anderson v. Standard Register Co., 857 S.W.2d 555, 558-59 (Tenn. 1993).

In a recent opinion of this Court, Robinson v. Nissan Motor Manufacturing Corporation, USA, 2000 WL 320677, authored by Senior Judge Inman, we addressed the question in some depth:

The issue for resolution is whether the plaintiff established the necessary element of causation required by Tennessee law. If circumstantial evidence is presented, it must be compelling on the issue that retaliation was a substantial factor in the decision to terminate the plaintiff. Thomason v. Better-Bilt Alum. Prod. Inc., 831 S.W.2d 291(Tenn.Ct.App.1992).

Mere proof of discharge without evidence of a causal link between the workers' compensation claim and the discharge "does not present an issue for the jury." Anderson, at 558-559. To present an issue for the trier of fact, the plaintiff must prove that his claim for workers' compensation benefits was a substantial factor in his employer's motivation to terminate his employment, Id. at 558, and the burden of forging this causal link rest upon the plaintiff. Id. at 559. Evidence of causation

-5-

requires more than facts showing employment, the exercise of rights, and a subsequent discharge. Thomason v. Better-Bilt Aluminum Products, Inc.. 831 S.W.2d 291, 293 (Tenn.Ct.App.1992). For a plaintiff to prevail, there must be either direct evidence of causation or compelling circumstantial evidence. Id. If the plaintiff fails to present adequate evidence of causation, then summary dismissal is justified. As the Supreme Court has observed, the "failure of proof concerning an essential element of the cause of action necessarily renders all other facts immaterial." Alexander v. Memphis Individual Practice Ass'n., 870 S.W.2d 278, 280 (Tenn.1993).

Even if a plaintiff is able to muster sufficient direct or circumstantial evidence to allow the inference of a causal link between the claim for benefits and the plaintiff's subsequent discharge, that does not end the inquiry. The burden is shifted to the employer to come forward with "a legitimate, non- pretextual reason for the employee's discharge." Anderson at 559.

Stated differently, causation does not exist if the basis for discharge is valid and not a mere pretext, even if the discharge is related or linked to a claim for benefits. Id. at 558. For example, an employer may fire an employee for excessive absenteeism, even though the absenteeism is caused by a compensable injury. See Anderson and cases cited therein. Other legitimate reasons include the employee's own shortcomings (such as tardiness, lack of skill, lack of truthfulness) and the employee's physical inability to do the job. Anderson, at 559 (citing A. Larson, The Law of Workmen's Compensation ).

Where the employer presents a legitimate, non-discriminatory reason for the employment action, the burden shifts back to the employee to prove that the employer's explanation is pretextual or not worthy of belief. Smith v. Bridgestone/Firestone, Inc., 1999 Tenn.App LEXIS 110 at *16 (Tenn.Ct.App. Feb. 23, 1999) (citing, Devore v. Deloitte & Touche, 1998 Tenn.App. LEXIS 122 at *12-13 (Tenn.Ct.App. Feb. 20, 1998). In doing so, the employee "must present specific admissible facts, which realistically challenge the defendant's stated reasons." Hubrig v. Lockheed Martin Energy Sys., 1998 Tenn.App. LEXIS 303 at *24 (Tenn.Ct.App. May 4, 1998). See also Wilkins v. Eaton Corp., 790 F.2d 515, 521 (6th Cir.1986); Silpacharin v. Metropolitan Gov't., 797 S.W.2d 625, 629 (Tenn.Ct.App.1990). The employee faces summary dismissal of his claims if he is unable to demonstrate that he could prove that the defendant's reason for the discharge was pretextual. DeVore, 1990 Tenn.App. LEXIS at *16-17. Thus, if the employee fails to make the required showing of pretext, the employer must prevail. Id.

Robinson v. Nissan Motor Manufacturing Corporation, USA, 2000 WL 320677, at *5-6 (Tenn. Ct. App. 2000).

Applying the holding of Robinson to the facts of this case, we conclude that there was

neither direct evidence of causation or compelling circumstantial evidence. We also note that in Robinson, the claimant "testified that he had nothing beyond his subjective feelings to support his claim, other than the beliefs of other employees who had been terminated. Subjective beliefs as to why he was dismissed do not create a genuine issue of material fact." Robinson, 2000 WL 320677, at *6 (citing Newsom v. Textron Aerostructures, 924 S.W.2d 87 (Tenn. Ct. App. 1995)). The testimony of Mr. Speakman is of similar import, in that he stated in an affidavit filed and in a discovery deposition the following:

14.     I can not help but feel that after my injury on November 25, 1992 Ms. Stubblefields attitude toward me, our working relationship, changed dramatically. I can not help but feel that she was looking for and/or trying to create a reason to terminate me.

Q     Have you had any problem relating with Ms. Stubblefield?
A     What do you mean any problem?
Q     Let's talk about before the injury. Did you have any problem talking with Ms. Stubblefield or her talking to you before you got hurt?
A     As far as being periodically, no. There were times she–all of us are human–she may be in a bad mood that day or I might have been. You know, you have those days but as far as I remember, no. It was nothing we couldn't talk.
Q     How about after you got injured, did it change?
A     At times it seemed like it did. This is my personal feeling but at times, it felt like there was a lot of pressure and we didn't get to talk. There was no conversations taking place.
Q     Did you attribute that to anything in particular?
A     Nothing–I couldn't pinpoint it to be exact.

For the foregoing reasons the judgment of the Circuit Court is affirmed and the cause remanded for the collection of costs below. Costs of appeal are adjudged against Ollie Speakman, Jr. and his surety.