IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
July 12, 2001 Session

# DORIS JEAN BRYANT v. TENNESSEE CONFERENCE OF THE UNITED METHODIST CHURCH

**Appeal from the Chancery Court for Davidson County**
**No. 98-1954-11     Carol McCoy, Chancellor**

_____

**No. M2000-01797-COA-R3-CV - Filed April 23, 2002**

_____

This is an employment discrimination case. The plaintiff is a black female who worked for the defendant religious organization full-time in a secretarial position. In 1998, the plaintiff expressed an interest in a part-time position with the religious organization as communications director, in addition to her full-time secretarial position. The religious organization decided to combine the position of communications director with a newly created position of director of disaster relief. The combined full-time position was offered to a white male. The plaintiff sued for racial discrimination under the Tennessee Human Rights Act. At the conclusion of the evidence, the trial court granted the organization's motion for directed verdict, finding that the plaintiff was not qualified for the combined position, and, in the alternative, that the position fell under the ministerial exception to the Tennessee Human Rights Act. The plaintiff now appeals. We affirm, finding that the plaintiff failed to produce evidence sufficient to infer that her race was a factor in the religious organization's decision to combine the two positions.

**Tenn. R. App. P. 3 Appeal as of Right ; Judgment of the Chancery Court Affirmed**

HOLLY KIRBY LILLARD, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and ALAN E. HIGHERS J., joined.

James L. Harris, Nashville, Tennessee, for the appellant, Doris Jean Bryant.

Lisa M. Carson, Franklin, Tennessee, for the appellee, Tennessee Conference of the United Methodist Church.

**OPINION**

This is an employment discrimination case. Plaintiff/Appellant Doris Bryant is a black female. Bryant has worked as a secretary for Defendant/Appellee Tennessee Conference of the United Methodist Church ("the Conference") since 1982.

In 1997, Bryant's immediate supervisor, Joy Carr, left her position as the Conference's Associate Director for Christian Education and Communications to accept a position elsewhere in the Methodist Church. As part of her duties as associate director for communications, Carr had been responsible for editing the Conference's newsletter. When Carr left, a member of the Conference's personnel committee, Reverend Randall Ganues, asked Bryant to take over some responsibilities for the newsletter on an interim basis. Bryant agreed, and some of Bryant's secretarial tasks were reassigned to allow her to work on the newsletter. Bryant's duties with the newsletter consisted primarily of collecting and editing articles, "laying out" the articles and scanning photographs onto a draft, and submitting the draft to the National Conference for printing. Bryant had little training or experience in putting together a newsletter, but the Conference was satisfied with her performance of these responsibilities.

The Conference initially advertised a job opening for Carr's former full-time position of Associate Director for Christian Education and Communications. Bryant did not apply for this position. The Conference received a number of resumes in response to this advertisement. However, during this time, the personnel committee re-evaluated the communication needs of the Conference in light of its budgetary constraints. The personnel committee ultimately concluded that the director of communications should have duties in addition to those Carr had, that the director of communications should report on local stories and communicate the Conference's position to the public, and not be limited to simply editing and laying out articles submitted for publication from outside sources, as Carr had done.

Bryant alleges that, at some point during this process, Reverend Ganues announced at a staff meeting that a part-time position for communications directors would become available and that the employee in this part-time position would have the primary responsibility for editing the Conference's newsletter.[1] Bryant alleges that she expressed an interest in having the part-time communications position in addition to her full-time secretarial position. In response, Reverend Ganues allegedly told Bryant that he was unsure whether the law would allow an employee to hold both a full-time and a part-time position with the same employer and that he would get back with her. Bryant alleges that, after this initial meeting, Reverend Ganues failed to follow up and let her know whether she could apply for the part-time position as communications director.

In April 1998, a tornado swept into Nashville, causing extensive damage. At that time, Reverend Robin Hall, a white male, was a pastor at the Gladeville (Tennessee) United Methodist Church. In response to the damage caused by the April tornado, a member of the Conference

---

[1]The Conference disputes that the job of communications director was ever advertised as a part-time position and, instead, Reverend Ganues alleges that it was Bryant who first contacted him about taking on a part-time position as communications director in addition to her full-time secretarial position.

personnel committee suggested contacting Reverend Hall to ask him to coordinate the Conference's response to the disaster. Reverend Hall agreed to do so. Shortly afterward, Reverend Ganues became aware that Reverend Hall had a background in journalism and communications. In light of this, the Conference decided to offer Reverend Hall a newly created full-time position, combining the duties of the Coordinator of Disaster Relief with the revised duties of the Director of Communications. Reverend Hall accepted a one year appointment to the newly created position of Director of Communications and Disaster Relief. As part of his communications duties, Reverend Hall became responsible for editing the Conference's newsletter. Bryant returned to her former duties in a full-time secretarial position working for Reverend Hall and the Conference's other associate directors. Bryant helped Reverend Hall edit the newsletter and trained him on using the Conference's editing software. When Reverend Hall's one-year appointment ended, the Communications Director position was offered as a part-time position. Bryant did not apply.

In June 1998, Bryant filed a lawsuit against the Conference under the Tennessee Human Rights Act (THRA), Tenn. Code Ann. § 4-21-101 et seq. The complaint alleged various acts of racial discrimination during her years of employment with the Conference. Prior to trial, all claims except those arising out of the 1998 hiring of Reverend Hall were dismissed.

The case proceeded to trial on the remaining claim regarding the hiring of Reverend Hall. At the close of all proof, the Conference moved for a directed verdict. The Conference argued that the Director of Communications and Disaster Relief was a "ministerial" position and, thus, the Free Exercise Clause of the First Amendment prohibited application of the THRA to the Conference's appointment of Reverend Hall. In the alternative, the Conference argued that Bryant had failed to prove that she was qualified for the position for which Reverend Hall was hired. In ruling on the motion, the trial court stated:

> The Court considered the record before it and found that the position in which Plaintiff expressed interest, that of Communications Director/Editor, was not a position for which the employer was considering applicants during the time period which is the subject of Plaintiff's complaint. The available position which was filled by the appointment of a white male was the position of Director of Communications and Disaster Relief, a position which Plaintiff acknowledges she was not interested in and was not qualified for. Accordingly, viewing all evidence in the light most favorable to the Plaintiff, the Court finds that no reasonable jury could conclude that Plaintiff established a prima facie case of race discrimination.

Thus, the trial court found that a part-time communications director position, the only position for which Bryant says she was qualified, was not available to anyone. Bryant therefore had failed to make out a prima facie case of racial discrimination under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). In addition, the trial court found that the position filled by Reverend Hall was a ministerial position and, therefore, under the First Amendment, was not subject to review under anti-discrimination laws. *See Equal Employment Opportunity Comm'n v. Catholic Univ. of America*,

83 F.3d 455 (D.C. Cir. 1996).  The trial court entered a directed verdict for the Conference.  From this order, Bryant now appeals.

On appeal, Bryant argues that there is evidence from which the jury could conclude that the Conference's decision to create the "merged" position of Director of Communications and Disaster Relief was motivated by impermissible considerations of race. Further, Bryant argues that the "ministerial exception" should not apply since the job in which she was interested, editing the Conference newsletter, was a non-ministerial position and was only later merged into a ministerial position, communications and disaster relief, as a result of Defendant's racial animus. Therefore, Bryant argues that the trial court erred in directing a verdict for the Conference.

When deciding a motion for a directed verdict, both the trial court and the reviewing court on appeal must look to all the evidence, take the strongest legitimate view of the evidence in favor of the opponent of the motion, and allow all reasonable inferences in favor of that party. *Crosslin v. Alsup*, 594 S.W.2d 379, 380 (Tenn. 1980). The court must discard all countervailing evidence, and if there is then any dispute as to any material fact, or any doubt as to the conclusions to be drawn from the whole evidence, the motion must be denied. *Conatser v. Clarksville Coca-Cola Bottling Co.*, 920 S.W.2d 646, 647 (Tenn. 1995); *Hurley v. Tenn. Farmers Mut. Ins. Co.*, 922 S.W.2d 887, 891 (Tenn. Ct. App. 1995). A directed verdict cannot be sustained if there is material evidence in the record which would support a verdict for the non-movant under any of the theories the non-movant had advanced. *Id.*; *Conatser*, 920 S.W.2d at 647.

The THRA bars discrimination in the context of employment practices. *See* Tenn. Code Ann. § 4-21-401. This would include an employer's decision to eliminate or alter a position for the purpose of discriminating against an applicant on the basis of race. *See Brenner v. Textron Aerostructures*, 874 S.W.2d 579, 589 (Tenn. Ct. App. 1993) ("We recognize that an employer cannot avoid liability by changing a job title or by making minor changes to a job in an attempt to avoid liability. This attempt could establish that the reduction in forces was itself a pretext.") (citations omitted). Therefore, if a part-time position had been available and the Conference's decision to eliminate that position was motivated by an intent to discriminate against Bryant on the basis of race, a cause of action under the THRA could lie.

Discrimination claims brought under the THRA are analyzed in the same manner as Title VII claims. *Tetro v. Elliott Popham Pontiac, Oldsmobile, Buick, and GMC Trucks, Inc.*, 173 F.3d 988, 993 (6th Cir. 1999) (citing *Campbell v. Fla. Steel Corp.*, 919 S.W.2d 26, 31 (Tenn. 1996)). Claims of alleged discriminatory employment practices are therefore reviewed under the *McDonnell Douglas* test and its progeny. The plaintiff "must carry the initial burden under [Title VII] of establishing a prima facie case of racial discrimination. *McDonnell Douglas*, 411 U.S. at 802. In order to make out a prima facie case of employment discrimination based on an employer's refusal to hire or promote, the plaintiff must show that he is a member of a protected class and, additionally, that:

(1) he applied for an available position;

(2) he was qualified for the position; and

(3) he was rejected under circumstances which give rise to an inference of unlawful discrimination in that his failure to be hired, transferred or promoted is more likely than not based on considerations of impermissible factors.

*Silpacharin v. Metro. Gov't*, 797 S.W.2d 625, 629 (Tenn. Ct. App. 1990) (quoting *Coe v. Yellow Freight Sys., Inc.*, 646 F.2d 444, 448-449 (10th Cir. 1981)). Once the plaintiff establishes a prima facie case of discrimination, the burden then shifts to the defendant to "articulate some legitimate, nondiscriminatory reason for the employee's rejection." *McDonnell Douglas*, 411 U.S. at 802. The plaintiff then has the opportunity to show that the defendant's proffered reason was in fact a pretext for discrimination. *Id.* at 804.

In this case, even if Bryant presented evidence that the part-time position of Communications Director was in fact available prior to creation of the combined position of Associate Director for Communications and Disaster Relief, the record contains no evidence from which a jury could reasonably infer that the Conference's decision to merge the communications position with the disaster relief position was based on considerations of race. Bryant offers her unsupported allegation that she was more qualified than Reverend Hall, but this is inapposite since Reverend Hall did not apply for the part-time position and Bryant did not apply for the combined full-time position for which Reverend Hall was hired. In the absence of evidence that the decision to create the combined position of Associate Director for Communications and Disaster Relief was motivated by racial animus, we must conclude that Bryant has failed to make out a prima facie case of racial discrimination. Therefore, the trial court did not err in granting a directed verdict in favor of the Conference. All other issues on appeal are pretermitted by this holding.

The decision of the trial is affirmed. Costs are taxed to appellant, Doris Jean Bryant, and her surety, for which execution may issue if necessary.

_____
HOLLY KIRBY LILLARD, JUDGE