IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
October 1, 2002 Session

## WILLIAM A. DAVIS v. RELIANCE ELECTRIC INDUSTRIAL COMPANY

**Direct Appeal from the Circuit Court for Cumberland County**
**No. CV002948     Hon. John Turnbull, Circuit Judge**

**FILED NOVEMBER 27, 2002**

**No. E2002-00973-COA-R3-CV**

Arbitrator awarded compensatory and punitive damages to plaintiff for retaliatory discharge.  On appeal, we affirm.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Circuit Court Affirmed.**

HERSCHEL PICKENS FRANKS, J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., J., and D. MICHAEL SWINEY, J., joined.

David A. Hughes, Atlanta, Georgia, for Appellant.

Jon E. Jones and Gregory L. Groth, Cookeville, Tennessee, for Appellee.

### OPINION

In this action for damages based upon an alleged  retaliatory discharge, the parties agreed to arbitration.

Plaintiff, was hired by the defendant in June of 1996, and in October of 1996, he suffered a work-related injury to his shoulder, and filed a workers compensation claim.  On October 16, 1997, plaintiff was again injured at work when he strained his back and neck.  Then on October 17, 1997, he was fired from his employment for excessive absenteeism.  Plaintiff's complaint was then filed in this case, alleging that he was fired in retaliation for seeking workers compensation benefits, and sought compensatory and punitive damages.

The Agreement to Arbitrate states that arbitration shall be used to resolve all claims/controversies for which a court would be authorized to grant relief related to plaintiff's employment with the company or his termination. Based upon the Agreement, the Court signed the Order sending the case to arbitration.

Counsel for the parties and the arbitrator then entered a Pre-Arbitration Order, which sets forth the basic procedures to be followed in the arbitration, and recites that the burden is on the plaintiff to prove a causal connection between the workers comp. claim and his discharge, and then the burden shifts to defendant to show a legitimate, non-pretextual reason for the discharge. The Order also states that the arbitrator is to decree a final judgment in writing within a certain time frame.

A hearing was held before the arbitrator where several witnesses testified and exhibits were filed. The arbitrator then issued a Memorandum Opinion, finding that plaintiff had filed a workers compensation claim in 1996 relating to a work injury, and that he had missed some work due to the injury. He further found that the proof showed that plaintiff was a good employee, but that he sometimes used poor judgment such as when he took a vacation early in his employment and was sunburned which then caused him to miss work. The arbitrator found that in June 1997, plaintiff met with his supervisor and was told that if he missed any more work before October 1, 1997, he would be terminated. The arbitrator found that the supervisor had prepared a performance evaluation for plaintiff which was now missing, but that the supervisor had testified in an earlier deposition that plaintiff's performance evaluation was good. The arbitrator found that in July of 1997, plaintiff was seriously injured in a four-wheeler accident, but that he came to work despite the pain he suffered because he did not want to be fired.

The arbitrator found defendant's witnesses were not credible, stating that it was "beyond the comprehension of the arbitrator as to why these people could not get their stories straight." The arbitrator found that plaintiff testified that he was asked by Ms. Friel, the human resources manager, if he had an attorney regarding his workers comp. claim, and that when he responded affirmatively, she seemed upset. She did not testify. The arbitrator found that on October 16, Davis injured himself at work and attempted to find the supervisor but could not, so he went to the safety director. The arbitrator found that the safety director told plaintiff to go home and put ice on his injury, and try to avoid filing another workers compensation claim.

Plaintiff was terminated the following day, and the reason given for his termination was excessive absenteeism. The arbitrator found that he could not rely in any way on the missing performance evaluation and attendance record. The arbitrator found that defendant had a policy stating that no employee should be absent more than 2% of the total work days in any 12 month period. The arbitrator found that of the "main players", plaintiff was most credible. The arbitrator was troubled by the missing documents, stating that it was "beyond belief" that the documents could be "missing" when they were absolutely crucial to the defense.

The arbitrator discussed the factors needed to prove a prima facie claim for retaliatory

discharge, and stated that this case fits the criteria "like a glove." The arbitrator said that once the prima facie case was made, the burden shifted to defendant to show a legitimate, non-pretextual reason for the discharge, and that defendant had alleged the reason of excessive absenteeism, but that ultimately the reason proffered was not valid and could not be proven in light of the contradictions in testimony and the absence of the critical records which were inexplicably "missing."

The arbitrator ruled in plaintiff's favor, awarding him compensatory damages including his medical bills and back pay, and awarded plaintiff emotional distress damages of $50,000.00, finding that plaintiff was clearly adversely affected by defendant's actions, that plaintiff was depressed, suffered a loss of self-esteem, and entertained thoughts of suicide.

The arbitrator then addressed plaintiff's claim for punitive damages, and found that defendant's actions of trying to hide, cover up, and confuse the record were clear violations of the law, and that they "must not go unpunished." The arbitrator stated that he had considered the factors set forth in *Coffey v. Fayette Tubular Products,* [929 S.W.2d 326 (Tenn. 1996)], and that he based his award of punitive damages on the fact that there was a retaliatory discharge and cover up by the company, and that records were destroyed to effectuate the same. The arbitrator awarded $525,000.00 based on the defendant's net worth, and stated that he hoped it would send defendant a message that such actions would not be tolerated. The arbitrator then stated he wanted plaintiff's counsel to prepare a judgment consistent with his award.

After much arguing by defendant's counsel about the form of the arbitrator's award, the arbitrator signed a document entitled Award of Arbitrator, which incorporated his attached memorandum opinion.

Upon competing motions to enforce the award or to vacate it, the Trial Court held a hearing and reviewed evidence presented to the arbitrator, and stated that he conducted a completely independent review of the punitive damage award, and found that the punitive damage award was totally appropriate and was based on clear and convincing evidence. The arbitrator's award was affirmed in all respects, and defendant Appealed.

Numerous issues are presented and include:

1. Whether the arbitrator exceeded his powers by failing to apply the agreed-upon burden shifting approach as required by Tennessee law?

2. Whether the arbitrator exceeded his authority by awarding emotional distress damages where there was insufficient proof to support such an award under Tennessee law?

3. Whether the arbitrator exceeded his authority by awarding punitive damages where the face of the Memorandum Opinion establishes that there was no clear and convincing evidence to support such an award?

4.      Whether the arbitrator exceeded his authority by failing to follow various agreed-upon procedures?

5.      Whether the trial court should have vacated the award?

In this jurisdiction, the Court may only vacate an arbitrator's award made pursuant to the Uniform Arbitration Act, as adopted in this State where:  the award was procured by corruption, fraud or other undue means; there was evident partiality by an arbitrator appointed as a neutral or corruption in any of the arbitrators or misconduct prejudicing the rights of any party; the arbitrators exceeded their powers; the arbitrators refused to postpone the hearing upon sufficient cause being shown therefor or refused to hear evidence material to the controversy or otherwise so conducted the hearing, contrary to the provisions of § 29-5-306, as to prejudice substantially the rights of a party;  or there was no arbitration agreement and the issue was not adversely determined in proceedings under § 29-5-303 and the party did not participate in the arbitration hearing without raising the objection.  Tenn. Code Ann. §29-5-313(a).[1]

The statute goes on to state that "[t]he fact that the relief was such that it could not or would not be granted by a court of law or equity is not ground for vacating or refusing to confirm the award."  *Id.*  Courts are limited to the statutory grounds for vacation of an arbitrator's award. *Warbington Construction, Inc. v. Franklin Landmark, L.L.C.*, 66 S.W.3d 853 (Tenn. Ct. App. 2001).

In this case, the defendant repeatedly alleges that the arbitrator exceeded his powers in various ways.  Case law makes clear, however, that an arbitrator only exceeds his powers by going beyond the scope of his authority granted by the arbitration agreement.  *Arnold v. Morgan Keegan & Co., Inc.*, 914 S.W.2d 445 (Tenn. 1996).  It is also clear that the standard of review which is applicable to arbitration awards is very narrow, and the award will be set aside "only in very unusual circumstances."  *Id*. at 448.

As the Supreme Court discussed in *Arnold,* the language of the statute evidences the intent to "limit severely the Trial Court's authority to retry the issues decided by arbitration."  *Id.* In fact, so long as the arbitrator is acting within his scope of authority, "the fact that a court is convinced he committed serious error does not suffice to overturn his decision."  *Id.* at 449.  The Supreme Court further recognized:

[a]rbitration is attractive because it is a more expeditious and final alternative to litigation.

The very purpose of arbitration is to avoid the courts insofar as the resolution of the

---

[1]  Although defendant at times alleges the Federal Arbitration Act should control, defendant does not dispute that the criteria for vacation of an arbitration award is basically the same under both the federal and state statutes.

dispute is concerned. The object is to avoid what some feel to be the formalities, the delay, the expense and vexation of ordinary litigation. Immediate settlement of controversies by arbitration removes the necessity of waiting out a crowded court docket....

Arbitration's desirable qualities would be heavily diluted, if not expunged, if a trial court reviewing an arbitration award were permitted to conduct a trial de novo.

*Id.* at 449, quoting *Boyd v. Davis*, 897 P.2d 1239 (Wash. 1995).

The Supreme Court thus held that when courts review an arbitration award, they are to be deferential, and cannot consider the merits of an award even in cases where the parties allege errors of fact or law. *Id.* at 450-451. The facts are to be accepted as found unless clearly erroneous, and questions of law should be considered in a manner "designed to minimize interference with an efficient and economical system of alternative dispute resolution." *Id.*

In this case, defendant alleges the arbitrator exceeded his power by failing to apply the burden shifting approach required by Tennessee case law. The Mutual Agreement to Arbitrate Claims states that "all claims or controversies" relating to plaintiff's employment or termination are subject to resolution by arbitration, thus plaintiff's claim was properly before the arbitrator. As defendant states, the parties agreed to apply Tennessee law regarding such claim and stated in their Pre-Arbitration Order that plaintiff had the burden of proof regarding "discharge plus causal connection/'substantial factor'", and that the burden would then shift to defendant to show a legitimate, non-pretextual reason for the discharge.

The arbitrator followed the proper analysis regarding these types of claims in his Memorandum Opinion, stating that the factors which plaintiff had to show were:

1. Plaintiff was employed by defendant at the time of injury;
2. Plaintiff made a claim against defendant for workers compensation benefits;
3. Defendant terminated plaintiff's employment; and
4. The workers comp. claim was a substantial factor in defendant's decision to terminate plaintiff.

These are precisely the factors which defendant argues should be applied, citing *Anderson v. Standard Register*, 857 S.W.2d 555 (Tenn. 1993). The arbitrator stated the law correctly regarding a prima facie showing, and found that this case fits the criteria "like a glove." Throughout the Memorandum Opinion, the arbitrator made factual findings which show that he felt each of these criteria had been met, and these findings are not clearly erroneous. Thus, the arbitrator correctly found that plaintiff had established retaliatory discharge.

As the arbitrator discussed, the burden of proof then shifts to the defendant to show a legitimate, non-discriminatory reason for the discharge. Defendant argues that it did so, alleging

that it must only offer a legitimate reason (whether supported by the evidence or not) and that plaintiff then has the burden of showing that proffered reason to be pretextual. Thus, defendant argued that it had only to articulate a legitimate reason, not prove the same, and that once it had done so, the burden shifted to plaintiff to prove the proffered reason is pretext.

In a case relied upon by defendant, *St. Mary's Honor Center v. Hicks*, 113 S. Ct. 2742 (1993), the U.S. Supreme Court explained the burden shift:

> The *McDonnell Douglas* presumption places upon the defendant the burden of producing an explanation to rebut the prima facie case - i.e. the burden of "producing evidence" that the adverse employment actions were taken "for a legitimate, nondiscriminatory reason." "The defendant must clearly set forth, through the introduction of admissible evidence," reasons for its actions which, *if believed by the trier of fact*, would support a finding that unlawful discrimination was not the cause of the employment action. It is important to note, however, that although the *McDonnell Douglas* presumption shifts the burden of *production* to the defendant, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff."

*Id.* at 2747 (citations omitted).

The Court went on to say that by producing evidence of a nondiscriminatory reason, persuasive or not, defendant meets its burden of production. There is to be no credibility assessment at this point. *Id.*

Once defendant has met its burden of production, the "trier of fact proceeds to decide the ultimate question: whether plaintiff has proved 'that the defendant intentionally discriminated against [him]' . . . disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination. Thus, rejection of the defendant's proffered reasons will *permit* the trier of fact to infer the ultimate fact of intentional discrimination". *Id.* at 2749.

The plaintiff can show that the proffered reason is mere pretext "by showing that the Company's reasons have no basis in fact, or if they have a basis in fact, by showing that they were not really factors motivating the discharge, or, if they were factors, by showing that they were jointly insufficient to motivate the discharge." *Moore v. Nashville Elec. Power Bd.*, 72 S.W.3d 643, 652 (Tenn. Ct. App. 2001). Defendant argues that it met its burden of production in this case, and that plaintiff failed to show that its proffered reason was pretextual.

The arbitrator's Opinion demonstrates that he followed the proper framework when making a determination of this claim. The arbitrator discussed the proper factors for a prima facie case of retaliatory discharge, and found that those had been met. He then explained the burden shift to defendant, and discussed that defendant had articulated a legitimate reason for plaintiff's

-6-

discharge, i.e., excessive absenteeism. Ultimately, however, the arbitrator found that plaintiff was the more credible witness, and that defendant's proffered reason for termination had no basis in fact, because defendant's witnesses were not credible (and that their testimony was full of contradictions) and because the records which would have supposedly substantiated defendant's reasons had been destroyed inexplicably.

We hold that the arbitrator did not exceed his authority, as defendant alleges in the award, and uphold the arbitrator's finding.

Next, defendant argues that the arbitrator exceeded his authority by awarding emotional distress damages where there was insufficient evidence to support the same, but the arbitrator found as a factual matter that plaintiff had suffered great emotional distress as a result of defendant's actions, and this fact finding is not clearly erroneous. The arbitration procedures agreed upon by the parties state that the arbitrator is the judge of evidentiary issues, and that conformity to legal rules of evidence is not necessary. Thus, any issues regarding evidence considered by the arbitrator are not properly reviewable by the Court. The arbitrator was empowered to hear all of the plaintiff's claims relating to his employment and termination, and there was no showing that the arbitrator exceeded his authority.

Defendant similarly argues that the arbitrator exceeded his authority by awarding punitive damages without using the magic language "clear and convincing evidence" in his Memorandum Opinion. While the Memorandum Opinion does not contain this language, the ultimate Award of Arbitrator approved by him did contain the same. In any event, it is clear from reading the Memorandum Opinion that the arbitrator was appalled by the behavior of the defendant in destroying relevant documentary evidence, failing to produce witnesses, and apparently having witnesses who did testify to confuse and fabricate their stories to the point they were not credible. It is clear that the arbitrator found the evidence on this issue to be clear and convincing.

The arbitrator considered the relevant factors required for a punitive damage award, including defendant's net worth, defendant's wrongdoing, its effect on the plaintiff, and defendant's attempts to "cover up" its wrongdoing. *See Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896 (Tenn. 1992). In addition, the Trial Judge conducted a complete independent review of the punitive damage award, and found the award to have been based on the correct factors pursuant to Tennessee law, determined the award was appropriate, and found that it was based on clear and convincing evidence.

Defendant argues that the same deferential standard of review which applies to other issues decided by the arbitrator should not apply to an award of punitive damages, but cites no authority for its position. In this case, the arbitrator based his award in part on the defendant's net worth, and consequently what would be needed to "send a message" to the defendant that such actions would not be tolerated. Both the arbitrator and the Trial Judge concluded the defendant's actions were reprehensible, as evidenced by the findings of fact regarding defendant's inexplicable destruction of crucial documents, its failure to provide critical witnesses, and the supervisors'

inability to "get their stories straight". The arbitrator specifically mentioned that such conduct was a clear violation of the law, and that the defendant's action had caused plaintiff emotional distress. He further found that the defendant acted to discourage the filing of workers comp. claims, and that the defendant had engaged in a "cover up" regarding plaintiff's termination. The Trial Court affirmed the findings of the arbitrator, and there is no question that the proper factors were considered, and the fact findings are not clearly erroneous. Accordingly, we affirm the award of punitive damages.

Further, defendant argues that the arbitrator exceeded his powers by failing to follow certain agreed upon procedures. Defendant alleges the arbitrator erred in having plaintiff's counsel prepare a formal award based on his Memorandum Opinion, but a review of the arbitration procedures indicates that such was not prohibited (and does not prejudice the parties). Similarly, the late filing of plaintiff's post-arbitration brief did not prejudice the defendant, because defendant was given the chance to reply.

Finally, defendant argues that the arbitrator's award was untimely, but our review of the record demonstrates that the arbitrator had other commitments which prohibited him from being able to complete his review of the record within the thirty days allowed. Defendant does concede, however, that neither party objected to the timeliness of the opinion, and the issue is therefore moot. *See* Tenn. Code Ann. §29-5-309.

We conclude the arbitrator did not exceed his authority and that the Trial Court was correct in affirming the arbitrator's award. Accordingly, the Judgment is affirmed as none of the limited statutory grounds for vacation of the award were demonstrated by the defendant.

The Judgment of the Trial Court is affirmed and the cost of the appeal is assessed to Reliance Electric Industrial Company.

_____
HERSCHEL PICKENS FRANKS, J.