# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
March 26, 2008 Session

## DHANANJAYA R. MARPAKA
v.
## JAMES A. HEFNER and TENNESSEE STATE UNIVERSITY

**Appeal from the Chancery Court for Davidson County**
**No. 03-3888-III     Ellen H. Lyle, Chancellor**

_____

**No. M2007-00733-COA-R3-CV - Filed October 3, 2008**

_____

This appeal involves alleged discrimination based on religion and national origin. The plaintiff is a native of India and a practitioner of Hinduism, and is employed as an associate professor at the defendant university. The plaintiff applied for a promotion to full professor. His application for promotion was denied, based on his lack of achievement in either academic research or public service activities. The plaintiff professor filed a lawsuit alleging that the university discriminated against him on the basis of national origin and religion. The defendants filed a motion for summary judgment, proffering the professor's lack of research and public service as a legitimate, nondiscriminatory reason for denying his application for promotion. The plaintiff conceded his lack of research and public service, but asserted that he was denied release time from his teaching responsibilities to engage in such activities. The trial court granted the university's motion for summary judgment, and the plaintiff professor appeals. We affirm, finding that the plaintiff professor cannot show the denial of his application for promotion was discriminatory because he cannot show that he was qualified for such a promotion. We also find the record insufficient to establish a genuine issue of material fact as to whether the denial of release time from the plaintiff's teaching responsibilities was discriminatory.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and DAVID R. FARMER, J., joined.

Dan R. Alexander, Nashville, Tennessee, for the appellant, Dhananjaya R. Marpaka

Robert E. Cooper, Jr., Attorney General and Reporter, and Michael Markham, Assistant Attorney General, Nashville, Tennessee, for the appellees, James Hefner and Tennessee State University

# OPINION

## FACTS AND PROCEEDINGS BELOW

This case involves allegations of discrimination on the basis of religion and national origin. Plaintiff/Appellant Dr. Dhananjaya R. Marpaka[1] ("Dr. Marpaka") is an associate professor employed by Defendant/Appellee Tennessee State University ("the University"). The University is funded by the State of Tennessee and is under the supervision of the Tennessee Board of Regents.

Dr. Marpaka is a native of India and a practitioner of Hinduism. He acquired his doctoral degree and joined the University in 1990 as a temporary assistant professor. In 1997, Dr. Marpaka received tenure and a promotion to the position of associate professor, teaching courses in circuit theory, energy conversion, and power systems in the Department of Electrical and Computer Engineering in the University's College of Engineering and Technology.

In October 2001, Dr. Marpaka applied for a promotion to the position of full professor. The review process for such an application is multi-layered. It appears from the record that, when a University associate professor seeks promotion to full professor, three separate tenure and promotion committees review the professor's qualifications. The first is a departmental committee, comprised of the professor's colleagues in his or her department; the second is a college or school committee; and the third is a university committee. In addition to a review by each committee, the professor's application is reviewed by the head of his or her department, the dean of his or her college or school, and, finally, by the president of the University. Dr. Marpaka's application for promotion was reviewed by the various tenure and promotion committees during the fall 2001 and spring 2002 semesters, but was ultimately denied. The vice president of academic affairs for the University, Dr. Augustus Bankhead, sent a letter to Dr. Marpaka informing him that he had not been recommended for promotion. Dr. Bankhead told Dr. Marpaka that, in order to be promoted, his teaching accomplishments had to be accompanied by "a higher level of productivity in" academic research or public service activities. Dr. Marpaka was told that he needed "substantial achievements" in either research or public service to receive the promotion for which he applied.

Dr. Marpaka appealed the denial of his application for promotion to the president of the University, Defendant/Appellee President James Hefner ("President Hefner" ). In response to Dr. Marpaka's appeal, President Hefner sent Dr. Marpaka a letter telling him that he affirmed the committee's decision. In agreement with Dr. Bankhead's assessment, President Hefner told Dr. Marpaka: "Your record strongly suggests that you are fully capable of satisfying the research and service criteria necessary for promotion to full professor, and I encourage you to work toward that goal."

After this, Dr. Marpaka appealed to the Tennessee Board of Regents. The Board of Regents affirmed President Hefner's decision. It agreed with the assessment that Dr. Marpaka had not

---

[1] Plaintiff/Appellant is also referred to as "Dhananjaja R. Marpaka" in various parts of the record and the briefs.

demonstrated sufficient achievement in either academic research or public service. The Chancellor of the Board of Regents, Chancellor Charles Manning, told Dr. Marpaka: "I expect that with increased research productivity consistent with your faculty development plan, your next application will yield a more favorable result."

Some time after the Board of Regents' decision, Dr. Marpaka consulted with an attorney. On February 10, 2003, Dr. Marpaka's attorney wrote a letter to President Hefner, expressing concerns over procedural irregularities that he said occurred during the consideration of Dr. Marpaka's application for promotion, and asserting that the University's tenure and promotion committees had denied Dr. Marpaka his right to due process. The University's general counsel responded by writing a letter to Dr. Marpaka's attorney, denying any procedural irregularities or violation of Dr. Marpaka's due process rights. Nevertheless, the University agreed to waive the deadline for Dr. Marpaka to submit a 2002 application for promotion. The letter from the University's general counsel stated:

> Although the 2002 deadline for submitting promotion applications has passed, [the University] hereby waives this deadline to allow Dr. Markpaka [sic] to apply for a promotion. He can either re-submit his previous application or, preferably, submit a new application that contains evidence of service and research activity. The University will convene the necessary advisory committees to review his application, and it will be considered in the same fashion as those submitted prior to the deadline.

Because the deadline was to be waived, Dr. Marpaka submitted another application for promotion.

When Dr. Marpaka submitted his second application for promotion, there were no other applicants for promotion or tenure from the College of Engineering. Therefore, the necessary tenure and promotion committees were set up after he re-applied. Dr. Marpaka's application was first considered by a three-member tenure and promotion committee for the Department of Electrical and Computer Engineering. This committee recommended that Dr. Marpaka not be promoted to full professor; it found substantial achievement by Dr. Marpaka in the area of instruction, but no evidence of any achievement in the areas of research and public service. The committee forwarded its recommendation to the head of the department on April 22, 2003. The head of the Department of Electrical and Computer Engineering concurred in the committee's recommendation that Dr. Marpaka not be promoted.

The department head's recommendation of no promotion was sent to the tenure and promotion committee for the University's College of Engineering for its review. The tenure and promotion committee for the College of Engineering reached a contrary conclusion. It described Dr. Marpaka's instructional workload as "excessive," evaluated his efforts in the areas of research and public service in light of the minimal time that his instructional workload left, and recommended that he be promoted to full professor. The College of Engineering committee forwarded its recommendation on to the Dean of the College of Engineering on June 4, 2003. The Dean reviewed Dr. Marpaka's application for promotion and found that it lacked documentation of "professional

productivity" since his 1997 promotion. Like the departmental committee and departmental head, the Dean recommended that Dr. Marpaka not be promoted to full professor. The Dean forwarded his recommendation to Dr. Bankhead on June 12, 2003.

Under normal circumstances, a University Personnel Committee would have reviewed Dr. Marpaka's application soon after the Dean's recommendation. However, because Dr. Marpaka's application was submitted after the deadline, by the time the Dean had made his recommendation, the 2002-2003 University Personnel Committee had concluded its business for the semester. Consequently, Dr. Marpaka's late-filed application was considered when the 2003-2004 semester University Personnel Committed convened. Ultimately, the University Personnel Committee recommended denial of Dr. Marpaka's application for promotion.

In the meantime, on December 22, 2003, Dr. Marpaka filed a claim for damages with the Tennessee Division of Claims Administration. *See* T.C.A. § 9-8-402 (1999 & Supp. 2007). In his claim, Dr. Marpaka alleged, *inter alia*, that the University and President Hefner refused to allow his second promotion application to be fully considered during the spring 2003 semester. He maintained that this action was in breach of the University's promise, made via the letter from the University's general counsel, to waive the deadline for submitting a promotion application. The Division of Claims Administration denied Dr. Marpaka's claim, stating, "[T]here is insufficient evidence to indicate that this loss [of wages, benefits, and earnings] was proximately caused by the negligence of state officials."

On December 31, 2003, Dr. Marpaka filed a lawsuit in the Chancery Court for Davidson County, Tennessee against the University and President Hefner.[2] His complaint alleged discrimination on the basis of religion and national origin, as prohibited by the Tennessee Human Rights Act.[3] Dr. Marpaka asserted that the University had violated its own policy, as put forth in its faculty handbook, by allowing Professor Nipha Kumar, an associate professor in the College of Engineering, to serve on the tenure and promotion committees at both the College of Engineering and the University levels. Dr. Marpaka also asserted that the University failed to give him access to the committee recommendations on his first application in a timely manner, leaving him unable to submit his second application before the deadline. Finally, Dr. Marpaka alleged that the University failed to fully consider his second application with the other fall 2002 applicants, despite its promise to waive the filing deadline. All of this, Dr. Marpaka argued, amounted to employment discrimination on the basis of religion and national origin.

In its Answer, the University denied that the promotion procedures contained in the faculty handbook were mandatory. It admitted that it had promised to waive the deadline to allow Dr. Marpaka to submit his second application for promotion, but denied that it took affirmative steps to

---

[2]Dr. Marpaka's claims against President Hefner were dismissed by the trial court, and the dismissal of these claims are not at issue in this appeal. Accordingly, we address only the claims against the University.

[3]*See* T.C.A. § 4-21-101 *et seq.* (2005).

prevent his application from being fully considered. It denied any employment discrimination against Dr. Marpaka. Discovery ensued.

Subsequently, the University filed a motion for summary judgment, contending that Professor Marpaka had not presented a *prima facie* case of discrimination. The University also maintained that it had a legitimate, nondiscriminatory reason for not promoting Dr. Marpaka to the position of full professor: his lack of academic research or public service. The University submitted documents and deposition testimony in support of its motion.

In response to the University's motion for summary judgment, Dr. Marpaka conceded his lack of research and public service, but argued that the University's reliance on this was a pretext for discrimination. To support his assertion that the University's reason was pretextual, Dr. Marpaka submitted his own affidavit, in which he claimed that other professors were promoted to full professor because of preferential treatment. Dr. Marpaka's affidavit noted that Dr. Mohammed Bodruzzaman and Dr. Saleh Sabatto were both Islamic, and had been promoted to full professor. It noted that the head of the Department of Electrical and Computer Engineering, Dr. S. S. Devgan, like Dr. Marpaka, is Indian. Dr. Devgan, Dr. Marpaka stated, is "of the Sikh faith" and he asserted that there "is a long history in India of conflict and hatred between people of my faith and people of [Dr.] Devgan's faith." Dr. Marpaka acknowledged that Dr. Sabatto had more research and public service than did Dr. Marpaka, but Dr. Marpaka claimed that Dr. Sabatto had been given more release time from teaching duties to pursue these other activities. Dr. Marpaka claimed that he was "denied release time."

The trial court issued a memorandum opinion on the University's motion for summary judgment. After reviewing the allocation of the burden of production and proof in an employment discrimination lawsuit, the trial court noted that the University claimed that the reason Dr. Marpaka was denied promotion was that he did not have sufficient research or public service work in addition to his teaching. The trial judge commented that Dr. Marpaka "presented no documented research activity at all." Instead, Dr. Marpaka relied on his assertion that the University "denied him release time to conduct research while other candidates were granted release time." Finding that Dr. Marpaka made only a "general allegation" regarding release time, with no facts or proof, the trial court found this to be insufficient to demonstrate a genuine issue of material fact that the University's proffered reason for denying him the promotion was a pretext for discrimination.

The trial court noted that Dr. Marpaka made general allegations of cultural and religious animosity, especially by Dr. Devgan, the head of his department, but did not link this in any way with the alleged procedural irregularities in the promotional process. Thus, the trial court found, there was no evidence to support Dr. Marpaka's assertion that the procedural irregularities were circumstantial evidence of discrimination. Therefore, the trial court granted the University's motion for summary judgment. From this order, Dr. Marpaka now appeals.

On appeal, Dr. Marpaka argues that the trial court erred in granting the University's motion for summary judgment. A motion for summary judgment should be granted if there are no genuine issues of material fact, and the movant is entitled to judgment as a matter of law. Tenn. R. Civ. P. 56.04. Because only questions of law are involved, there is no presumption of correctness regarding a trial court's decision. *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997). Therefore, our review is *de novo* on the record before this Court. *Warren v. Estate of Kirk*, 954 S.W.2d 722, 723 (Tenn. 1997). We must consider the evidence presented in the light most favorable to the party opposing summary judgment. *Bain*, 936 S.W.2d at 622.

## ANALYSIS

The Tennessee Human Rights Act ("THRA") prohibits discriminatory practice in employment. *See* T.C.A. § 4-21-401 (2005). THRA claims are analyzed in the same manner as claims brought under Title VII of the Civil Rights Act of 1964. *Tetro v. Elliott Popham Pontiac, Oldsmobile, Buick, & GMC Trucks, Inc.*, 173 F.3d 988, 993 (6th Cir. 1999) (citing *Campbell v. Fla. Steel Corp.*, 919 S.W.2d 26, 31 (Tenn. 1996)). Accordingly, we analyze Dr. Marpaka's claims under the burden-shifting framework set forth by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) and its progeny, as noted in the trial court's memorandum opinion.

In the absence of direct evidence of discrimination, the plaintiff must establish a *prima facie* case of discrimination, based on circumstantial evidence from which a fact finder could infer that discriminatory animus was more likely than not the reason for the adverse employment action. *Versa v. Policy Studies, Inc.*, 45 S.W.3d 575, 580 (Tenn. Ct. App. 2000) (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981)). To make out a *prima facie* case of employment discrimination in promotion, the plaintiff must show that he applied for the promotion, that he was qualified for the promotion, and that he was not promoted " 'under circumstances which give rise to an inference of unlawful discrimination in that his failure to be . . . promoted is more likely than not based on considerations of impermissible factors.' " *Silpacharin v. Metro. Gov't of Nashville & Davidson County*, 797 S.W.2d 625, 629 (Tenn. Ct. App. 1990) (quoting *Coe v. Yellow Freight Sys., Inc.*, 646 F.2d 444, 448-49 (10th Cir. 1981)). Once the plaintiff establishes a *prima facie* case of discrimination, the burden shifts to the defendant to proffer a legitimate, nondiscriminatory reason for the adverse employment action. *McDonnell Douglas*, 411 U.S. at 802. If the employer does so, the burden shifts back to the plaintiff, who must show that the employer's proffered reason for the adverse employment action was a pretext for discrimination. *Id.* at 804.

In this case, Dr. Marpaka claims that the University discriminated against him in the denial of his application for promotion. The University's faculty handbook, a portion of which was made an exhibit by Dr. Marpaka, discusses the criteria upon which the University relies to evaluate a candidate for promotion. The handbook lists, among other criteria, instruction, research, and public service activities as important measures of qualification. The letters and documents submitted by the University in support of its summary judgment motion, in which the various persons and

committees who evaluated Dr. Marpaka's application state the reason for their recommendation of no promotion, consistently point to his lack of substantial achievement in the areas of research and public service.

The record includes no evidence submitted by Dr. Marpaka of either public service or research activities. Instead, he explains in his affidavit that he was deprived of the opportunity to pursue research activities because he was "denied release time" to pursue them. He asserts generally that Dr. Sabatto, whom he asserts is "Islamic," received release time and was promoted.

As noted above, to establish a *prima facie* case of discrimination in promotion, the plaintiff must show that he was qualified for the promotion. Here, it is undisputed that substantial achievement in the areas of research and/or public service was a necessary qualification for promotion to full professor, and that Dr. Marpaka could show neither. Dr. Marpaka makes no allegation that other candidates were promoted in the absence of such achievement in research and/or public service. We can only conclude from this record that Dr. Marpaka was not qualified for promotion to full professor, and he, therefore, cannot establish a *prima facie* case of discrimination on the basis of national origin or religion in the denial of his application for promotion.

Dr. Marpaka goes on to allege that he did not have the requisite research or public service because he was "denied release time" to perform such activities. Others, he asserts, such as Dr. Sabatto, were given release time and were promoted.

We consider the relevance of this allegation in the context of Dr. Marpaka's overall claim of discrimination. The allegation does not save his claim that the denial of his application for promotion was discriminatory; if research and/or public service achievement is a necessary qualification and he cannot point to similarly situated employees who were promoted to full professor without such achievement, he cannot make out such a claim. The only way in which this allegation is relevant is if the "denial of release time" is itself the adverse employment action that forms the basis for his claim. We presume, then, that Dr. Marpaka seeks to allege that the University discriminated in its "denial of release time" from teaching duties for him to conduct research and public service activities, in order for him to *become* qualified for promotion.

The problems with this allegation are numerous. We note first that Dr. Marpaka's complaint makes no allusion to any "denial of release time," discriminatory or otherwise. Even assuming that the complaint can be interpreted to include such an allegation, the assertions in Dr. Marpaka's affidavit in response to the University's summary judgment motion are clearly insufficient. He makes only the most general allegations that he was "denied release time" while others, such as Dr. Sabatto, were given release time. He does not assert that he was "denied release time" on the basis of his national origin or his religion, does not say who denied him release time, and, indeed, does

not even claim that he *asked* for such release time.[4]  He alleges no facts from which the trier of fact could find that Dr. Sabatto, or anyone else, was similarly situated to him and was treated differently for reasons of religion or national origin.  Likewise, the allusion in his affidavit to Dr. Devgan's faith and the historical animosities between those of the Sikh and Hindu faiths is linked to no adverse employment action; indeed, Dr. Marpaka makes no allegation that Dr. Devgan had discriminatory intent in making any decision affecting Dr. Marpaka.

Under all of these circumstances, we agree with the trial court's grant of summary judgment in favor of the University.

The decision of the trial court is affirmed.  Costs of this appeal are taxed to Plaintiff/Appellant Dhananjaya R. Marpaka, and his surety, for which execution may issue if necessary.

_____
HOLLY M. KIRBY, JUDGE

---

[4]We note that the tenure and promotion committee commented on Dr. Marpaka's "excessive" teaching workload, consistent with Dr. Marpaka's allegation that he did not receive sufficient release time to engage in research or public service activities.  Nevertheless, nowhere in the appellate record is this tied in with Dr. Marpaka's religion or national origin.