IN THE SUPREME COURT OF TENNESSEE
AT NASHVILLE
February 11, 2010 Session

**GARY M. GOSSETT v. TRACTOR SUPPLY COMPANY**

**Appeal by Permission from the Court of Appeals, Middle Section**
**Chancery Court for Davidson County**
No. 04-1484-IV      Richard H. Dinkins, Chancellor

No. M2007-02530-SC-R11-CV - Filed September 20, 2010

CORNELIA A. CLARK, J., concurring in part and dissenting in part.

I concur in part II of the majority opinion, holding that the reporting of an illegal activity is not an essential element of an employee's claim of retaliatory discharge for refusing to participate in an illegal activity, and, as I explain subsequently, I ultimately concur in the judgment denying the defendant's motion for summary judgment. Nonetheless, I write separately to dissent from the majority's decision in part I to dispense with the framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), at the summary judgment stage in all employment discrimination and retaliation cases.

The McDonnell Douglas framework is compatible with our summary judgment framework as set forth in the Tennessee Rules of Civil Procedure and Hannan v. Alltel Publishing Co., 270 S.W.3d 1 (Tenn. 2008). Pursuant to Rule 56.04, a moving party obtains summary judgment by "show[ing] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." As that rule is interpreted in Hannan, a party moving for summary judgment and "seek[ing] to shift the burden of production to the nonmoving party who bears the burden of proof at trial must either: (1) affirmatively negate an essential element of the nonmoving party's claim; or (2) show that the nonmoving party cannot prove an essential element of the claim at trial." 270 S.W.3d at 8-9. A moving party cannot merely "challenge the nonmoving party to 'put up or shut up' or . . . cast doubt on a party's ability to prove an element at trial." Id. at 8.

To establish the employer's liability for retaliatory discharge of an at-will employee at common law, the employee must prove that (1) the employee's discharge violated a clear public policy and (2) said violation of clear public policy was a substantial factor in the employee's termination. Guy v. Mutual of Omaha Ins. Co., 79 S.W.3d 528, 535 (Tenn.

2002); Chism v. Mid-South Milling Co., 762 S.W.2d 552, 556 (Tenn. 1988). In a motion for summary judgment, when an employer submits evidence that the plaintiff-employee was discharged for a legitimate, non-pretextual reason, the employer affirmatively negates the final element of the cause of action for retaliatory discharge. To put it another way, the employer shows that the plaintiff cannot prove that the violation of clear public policy was a substantial factor in the termination decision because the employer has pointed to the legitimate factor that actually prompted the decision. When the employer supports this assertion with evidence from the record, the employer does more than identify deficiencies in the non-moving party's evidence or tell the non-moving party to "put up or shut up." Instead, the employer makes an affirmative showing that shifts the burden of production to the non-moving plaintiff.

Admittedly, as the majority opinion points out, our Court has not reached, in the context of a summary judgment motion on a common-law claim for retaliatory discharge, the question of what the employee must do after the employer has proffered a legitimate reason for the discharge.[1] Nonetheless, in other causes of action for employment discrimination and retaliation, such as a claim brought under the Tennessee Human Rights Act ("THRA"), we have held that the employee must then "present evidence demonstrating that the articulated reason is pretextual and that the defendant's action was actually motivated by a desire to retaliate against the employee." Allen v. McPhee, 240 S.W.3d 803, 821 (Tenn. 2007). The employee can meet the burden of production through evidence that (1) the employer's reason lacks a basis in fact, (2) the employer's reason was not the actual motivation for the discharge, or (3) the employer's reason is not sufficient to warrant a discharge. Id. at 823 (citing Carter v. Univ. of Toledo, 349 F.3d 269, 274 (6th Cir. 2003)).

Although the majority criticizes the McDonnell Douglas framework as applied to motions for summary judgment, we do not need to abrogate that framework in order to deny

---

[1] The majority also states that, in the common-law retaliatory discharge context, we have never "been called on . . . to demonstrate how the employer's burden of showing a legitimate reason for discharge applies at the summary judgment stage." A review of the cited cases suggests otherwise. Through an excerpt from a prominent secondary authority, we have given examples of legitimate, non-pretextual reasons. Anderson v. Standard Register Co., 857 S.W.2d 555, 559 (Tenn. 1993) (quoting 2A A. Larson, The Law of Workmen's Compensation § 68.36(d), at 188-91 (1990)). Our quotation from Larson's treatise specifically explained that, when the employer invoked general business conditions as the legitimate reason, evidence of other layoffs unrelated to retaliation would be a particularly appropriate showing to substantiate that reason. Id. We have also explained that defendants will obtain summary judgment in such cases "only when the facts and inferences drawn from those facts permit a reasonable person to reach only one conclusion," ultimately denying summary judgment where the employer had cited a legitimate reason for discharge but the evidence allowed the trier of fact to infer that a retaliatory motive was a substantial factor in the employee's discharge. Guy, 79 S.W.3d at 534, 539.

summary judgment in this case. Here, the employer predicated its motion for summary judgment on the testimony of its vice-president and controller, David Lewis, who stated that he terminated the plaintiff because plaintiff's position was redundant and the employer desired to reduce its workforce. Eliminating redundancies and reducing the workforce are legitimate reasons to terminate employees. Ercegovich v. Goodyear Tire & Rubber Co., 154 F.3d 344, 350-51 (6th Cir. 1998); Brenner v. Textron Aerostructures, 874 S.W.2d 579, 588 (Tenn. Ct. App. 1993). Nonetheless, the record is replete with evidence that the employer's stated reasons for discharging plaintiff were pretextual: the testimony of plaintiff's successor concerning the "dramatically different" job responsibilities of plaintiff's position, Lewis's statement to plaintiff's successor that plaintiff was terminated for "unacceptable performance," a newspaper advertisement for a position in plaintiff's department that ran earlier in the week when plaintiff was terminated, and the demotion rather than discharge of plaintiff's predecessor. This evidence suggests that the employer was not actually eliminating redundancies or reducing its workforce but discharged the plaintiff for some other reason. Accordingly, there is a genuine issue of material fact whether plaintiff's refusal to participate in allegedly illegal activity was a substantial reason for plaintiff's termination.

Therefore, applying the McDonnell Douglas framework to this record, I readily concur that we should affirm the judgment of the Court of Appeals and deny the employer's motion for summary judgment. Nonetheless, my conclusion begs the question of why the majority has chosen this case to depart from McDonnell Douglas. The suitability of the McDonnell Douglas framework for the analysis of these facts makes it unnecessary, in my view, to use this case as a vehicle for upending summary judgment practice in all of the employment discrimination and retaliation cases in Tennessee's courts.

Indeed, the McDonnell Douglas framework has served Tennessee courts long and well in employment law cases, even in cases decided since we began to depart from the federal summary judgment standard. Fewer than three years ago, we capably applied the McDonnell Douglas framework to analyze a THRA retaliation claim at the summary judgment stage in Allen, a decision that the majority opinion unduly maligns today. In that case, among other issues, we were able to conclude that the employer was entitled to summary judgment on the plaintiff's retaliation claim. Id. at 823. Although the plaintiff made out a prima facie case of retaliation by showing that she had been reassigned shortly after she filed a sexual harassment complaint, the employer articulated a legitimate, non-discriminatory reason for the transfer: protecting the plaintiff from further sexual harassment. Id. We then concluded the plaintiff lacked any evidence that her employer's motive was pretextual. Id. We specifically concluded, "While a reasonable person could conclude that [the plaintiff] has been assigned to a position that is less desirable than her previous position, her reassignment is clearly superior to the alternative of remaining in a position in which she would be forced to interact closely with her harasser." Id.

-3-

Our decision in Allen validated the merit of the McDonnell Douglas framework as "'a sensible, orderly way to evaluate the evidence . . . as it bears on the critical question of discrimination'"—a function that the framework serves just as well at the summary judgment phase as it does at trial. See George v. Leavitt, 407 F.3d 405, 411 (D.C. Cir. 2005) (quoting United States Postal Serv. Bd. of Governors v. Aikens, 460 U.S. 711, 715 (1983)) (other internal quotation omitted). Applying the McDonnell Douglas framework in Allen allowed us to evaluate, in logical sequence, (1) the circumstantial evidence of causation, which was limited to the close temporal proximity between plaintiff's sexual harassment complaint and the reassignment; (2) the employer's legitimate reason for reassigning the plaintiff; and (3) the absence of evidence to show that the employer's reason was pretextual, that is, not the real reason for the reassignment.

Our analysis in Allen withstands the criticisms that the majority levels against it here. Application of the McDonnell Douglas framework in Allen did not "skew[] our summary judgment analysis in favor of the employer," as the majority asserts. Instead, we concluded that, given the employer's unrebutted intent to protect the plaintiff from further harassment, there was no genuine issue of material fact as to whether the plaintiff was reassigned in retaliation against her protected activity. Similarly, in Allen we did not "separate[] the evidence supporting the employee's prima facie case . . . from our consideration of whether the employee presented evidence of pretext" when we concluded that the plaintiff had done nothing to contradict the evidence that her employer had reassigned her as protection against further sexual harassment. Even in making out her prima facie case, the plaintiff's only evidence of causation was an inference predicated on the temporal proximity between the filing of her sexual harassment complaint and her reassignment. Under those circumstances, no genuine issue remained for trial on the ultimate question of retaliation.

Given our longstanding reliance on the McDonnell Douglas framework, we should be more deliberate about the decision to abandon it. Before Allen, this Court and the Court of Appeals had issued a long line of published decisions applying McDonnell Douglas at the summary judgment stage. Indeed, the framework was first used by our Court of Appeals more than a quarter-century ago to affirm the dismissal of a THRA age discrimination claim. Bruce v. W. Auto Supply Co., 669 S.W.2d 95, 97 (Tenn. Ct. App. 1984). Since that time, the McDonnell Douglas framework has been used in at least twenty-five published decisions of this court or the Court of Appeals, including eighteen cases involving motions for summary judgment. Allen, 240 S.W.3d at 819 (summary judgment); Barnes v. Goodyear Tire & Rubber Co., 48 S.W.3d 698, 708 (Tenn. 2000); Phillips v. Interstate Hotels Corp. No. L07, 974 S.W.2d 680, 684 (Tenn. 1998) (summary judgment); Marpaka v. Hefner, 289 S.W.3d 308, 313 (Tenn. Ct. App. 2008) (summary judgment); Bundy v. First Tenn. Bank Nat'l Ass'n, 266 S.W.3d 410, 416-17 (Tenn. Ct. App. 2007) (summary judgment); Frye v. St. Thomas Health Servs., 227 S.W.3d 595, 610 (Tenn Ct. App. 2007) (summary judgment);

Oates v. Chattanooga Publ'g Co., 208 S.W.3d 418, 425 (Tenn. Ct. App. 2006) (summary judgment); Frame v. Davidson Transit Org., 194 S.W.3d 429, 434-35 (Tenn. Ct. App. 2005) (summary judgment); Arnett v. Domino's Pizza I, L.L.C., 124 S.W.3d 529, 540 n.6 (Tenn. Ct. App. 2003); Miller v. City of Murfreesboro, 122 S.W.3d 766, 776 (Tenn. Ct. App. 2003) (summary judgment); Dennis v. White Way Cleaners, L.P., 119 S.W.3d 688, 694 (Tenn. Ct. App. 2003) (summary judgment); Fox v. Baptist Mem'l Hosp. Tipton, 148 S.W.3d 903, 906 (Tenn. Ct. App. 2002) (summary judgment); Davis v. Reliance Elec., 104 S.W.3d 57, 62-63 (Tenn. Ct. App. 2002); Wilson v. Rubin, 104 S.W.3d 39, 50-51 (Tenn. Ct. App. 2002) (summary judgment); Moore v. Nashville Elec. Power Bd., 72 S.W.3d 643, 651-52 (Tenn. Ct. App. 2001) (summary judgment); Perlberg v. Brencor Asset Mgmt., Inc., 63 S.W.3d 390, 394-95 (Tenn. Ct. App. 2001) (summary judgment); Versa v. Policy Studies, Inc., 45 S.W.3d 575, 580-81 (Tenn. Ct. App. 2000) (summary judgment); Spann v. Abraham, 36 S.W.3d 452, 465 (Tenn. Ct. App. 1999); Smith v. Bridgestone/Firestone, Inc., 2 S.W.3d 197, 200-01 (Tenn. Ct. App. 1999) (summary judgment); Frazier v. Heritage Fed. Bank for Sav., 955 S.W.2d 633, 636 (Tenn. Ct. App. 1997); Mangrum v. Wal-Mart Stores, Inc., 950 S.W.2d 33, 39 (Tenn. Ct. App. 1997) (summary judgment); Newsom v. Textron Aerostructures, 924 S.W.2d 87, 96 (Tenn. Ct. App. 1995) (summary judgment); Loeffler v. Kjellgren, 884 S.W.2d 463, 469 (Tenn. Ct. App. 1994); Brenner, 874 S.W.2d at 583 (summary judgment); Silpacharin v. Metro. Gov't, 797 S.W.2d 625, 629-30 (Tenn. Ct. App. 1990).

The experience of other jurisdictions confirms that the abandonment of McDonnell Douglas does not inevitably accompany a departure from the federal summary judgment standard. A recent scholarly article on summary judgment in Tennessee identified eight other states that, like us, have rejected the federal standard set forth in Celotex Corp. v. Catrett, 477 U.S. 317 (1986) (plurality opinion): Alaska, Connecticut, Florida, Indiana, Kentucky, New Mexico, Oklahoma, and Texas.[2] Judy M. Cornett, Trick or Treat? Summary Judgment in Tennessee After *Hannan v. Alltel Publishing Co.*, 77 Tenn. L. Rev. 305, 344 (2010). At least two of these states have adopted a summary judgment regime that imposes even greater burdens on the moving party and/or lesser burdens on the non-moving party than does Tennessee. Id. at 344-45. All of these states, however, continue to apply the McDonnell Douglas framework at the summary judgment stage in employment cases. Mahan v. Arctic Catering, Inc., 133 P.3d 655, 660 (Alaska 2006); Ford v. Blue Cross & Blue Shield of Conn., Inc., 578 A.2d 1054, 1060-61 (Conn. 1990); Byrd v. BT Foods, Inc., 948 So. 2d 921, 927 (Fla. Dist. Ct. App. 2007); Purdy v. Wright Tree Serv., Inc., 835 N.E.2d 209, 213 (Ind. Ct. App. 2005); Bohl v. City of Cold Spring, — S.W.3d —, 2009 WL 3786633, at *3 (Ky. Ct.

---

[2] By amending its summary judgment rule in 1997 to add a no-evidence motion that allows the moving party to obtain summary judgment without presenting evidence, Texas "obviated, to some extent, the differences in summary judgment procedure" between the Texas and federal systems. Huckabee v. Time Warner Entm't Co., 19 S.W.3d 413, 421 (Tex. 2000) (discussing Tex. R. Civ. P. 166a(i)).

App. Nov. 13, 2009); <u>Juneau v. Intel Corp.</u>, 127 P.3d 548, 551 (N.M. 2005); <u>Buckner v. Gen. Motors Corp.</u>, 760 P.2d 803, 806-07 (Okla. 1988); <u>Tex. Dep't of Human Servs. v. Hinds</u>, 904 S.W.2d 629, 636 (Tex. 1995). Furthermore, the majority's decision places Tennessee among a small minority of jurisdictions, as we become only the fourth state to abandon wholesale the <u>McDonnell Douglas</u> framework in all employment discrimination and retaliation causes of action at the summary judgment stage.[3]

Going forward, the majority's abandonment of the <u>McDonnell Douglas</u> framework is likely to engender uncertainty among both courts and counsel as to when defendants can obtain summary judgment in employment discrimination and retaliation cases filed in Tennessee courts. The majority maintains that, consistent with <u>Hannan</u>, the employer must set forth evidence affirmatively negating an essential element of the plaintiff's claim or show that the plaintiff cannot prove an essential element of the claim at trial. However, when the employer submitted evidence in this case of its legitimate, non-retaliatory reason for discharging the plaintiff, the majority dismissed this proof as insufficient because it failed to show that the non-retaliatory reason "was the exclusive reason for discharging Mr. Gossett" and because it does not show "an absence of a retaliatory motive." However, the majority provides little, if any, specific guidance as to how employers could otherwise shift the burden of production onto the plaintiff at the summary judgment phase. If proof of a legitimate explanation for the employee's termination (or other adverse employment action) can no longer affirmatively negate, or show that the plaintiff cannot prove, the causation element of the plaintiff's claim, then the majority has foreclosed perhaps the most common argument among defendants seeking summary judgment in employment discrimination and retaliation cases. <u>See</u> Ann C. McGinley, <u>Credulous Courts and the Tortured Trilogy: The Improper Use of Summary Judgment in Title VII and ADEA Cases</u>, 34 B.C. L. Rev. 203, 244-45 (1993) (explaining that a defendant "will not wait for the plaintiff to establish a prima facie case in response to the motion" for summary judgment but instead, "in the moving papers, . . . will attempt to articulate a legitimate, non-discriminatory reason for the employment decision"); <u>see also</u> Christopher R. Hedican et al., <u>McDonnell Douglas: Alive and Well</u>, 52 Drake L. Rev. 383, 424 (2004) (describing the instance when a plaintiff cannot make the prima facie showing as an "unusual case").

The majority's commentary on our prior decision in <u>Allen</u> only heightens this uncertainty. In citing <u>Allen</u> as a textbook example of the flaws of the <u>McDonnell Douglas</u>

---

[3] At summary judgment the <u>McDonnell Douglas</u> framework remains viable throughout the federal courts and is used in at least some aspect of employment law by every state except Missouri, <u>Hill v. Ford Motor Co.</u>, 277 S.W.3d 659, 664-65 (Mo. 2009), Oregon, <u>Lansford v. Georgetown Manor, Inc.</u>, 84 P.3d 1105, 1115 (Or. Ct. App. 2004), and Virginia, <u>Jordan v. Clay's Rest Home, Inc.</u>, 483 S.E.2d 203, 206-08 (Va. 1997).

framework, and specifically criticizing it as "skewed . . . in favor of the employer," the majority states unequivocally that the case would have come out differently if it had been analyzed without reference to that framework. In so doing, the majority's opinion has gone beyond circumscribing defendants' ability to obtain summary judgment and has also sharply reduced the quantum of proof that a plaintiff needs to survive summary judgment. In Allen, the only evidence of causation was an inference created by the temporal proximity between the filing of the sexual harassment complaint and the reassignment. A majority of the federal courts of appeals have affirmatively rejected the proposition that, where the employer has set forth a legitimate, non-discriminatory reason for its action, temporal proximity alone is sufficient evidence of pretext to survive summary judgment. See, e.g., Mariani-Colón v. Dep't of Homeland Security ex rel. Chertoff, 511 F.3d 216, 224 (1st Cir. 2007); Aryain v. Wal-Mart Stores Texas LP, 534 F.3d 473, 487 (5th Cir. 2008); Asmo v. Keane, Inc., 471 F.3d 588, 598 (6th Cir. 2006); Bourbon v. Kmart Corp., 223 F.3d 469, 473 (7th Cir. 2000); Green v. Franklin Nat'l Bank of Minneapolis, 459 F.3d 903, 916 (8th Cir. 2006); Hashimoto v. Dalton, 118 F.3d 671, 680 (9th Cir. 1997); Annett v. Univ. of Kan., 371 F.3d 1233, 1241 (10th Cir. 2004); Wascura v. City of S. Miami, 257 F.3d 1238, 1244-45 (11th Cir. 2001). Here, the majority has not cited a single case from any jurisdiction finding that temporal proximity alone is sufficient to create a genuine issue of material fact for the purpose of denying an employer's summary judgment motion in a retaliatory discharge case.

By simultaneously eliminating the McDonnell Douglas framework and repudiating our analysis in Allen, the majority opens the door for an employee to survive summary judgment on the causation element through temporal proximity alone, even where the employer affirmatively shows from the record that it took an adverse employment action for a legitimate reason apart from discrimination or retaliation. In other words, an employer advancing a legitimate reason for its personnel action may now fail at the summary judgment stage even if the employee has no evidence of pretext. This sweeping change in our law will make it needlessly more difficult for defendants to obtain summary judgment in employment discrimination and retaliation cases, leaving chancery and circuit courts to bear the brunt of heavier trial calendars.[4]

---

[4] We should also be cautious about the effects—both intended and unintended—of discarding the McDonnell Douglas framework. Three potential effects are worth mentioning here. First, the framework remains intact in summary judgment proceedings in Tennessee's federal courts. Harris v. Metro. Gov't, 594 F.3d 476, 484-85 (6th Cir. 2010); Clark v. Hoops, LP, — F. Supp. 2d —, 2010 WL 1417744, at *5-6 (W.D. Tenn. Apr. 1, 2010). Defendants will, therefore, continue to be able to obtain summary judgment in federal court on grounds that are foreclosed by the majority opinion. The likely upshot of the majority's opinion is different outcomes in employment discrimination and retaliation cases in Tennessee, depending on whether those cases are decided in state or federal court. This divergence marks an abrupt change in our jurisprudence, which, up to this point, has drawn on the corresponding federal law to interpret our own

(continued...)

In arguing for the preservation of the McDonnell Douglas framework at the summary judgment phase, I do not purport to maintain that our lower courts have always applied the framework perfectly. Indeed, there are surely instances of the "rigid, mechanized, or ritualistic" application of the framework that the United States Supreme Court has warned against. Aikens, 460 U.S. at 715 (internal quotation omitted). The McDonnell Douglas framework was never intended to preclude courts from considering evidence in the pretext analysis that was also relevant to establishing the plaintiff's prima facie case. See, e.g., Longs v. Ford Motor Co., 647 F. Supp. 2d 919, 937 (W.D. Tenn. 2009); Smith, 2 S.W.3d at 200-01. Similarly, because of the fact-intensive nature of employment disputes, they are typically less amenable to summary judgment than other types of cases. See Singfield v. Akron Metro. Hous. Auth., 389 F.3d 555, 564 (6th Cir. 2004). But see Elizabeth M. Schneider, The Changing Shape of Federal Civil Pretrial Practice: The Disparate Impact on Civil Rights and Employment Discrimination Cases, 158 U. Pa. L. Rev. 517, 549-50 (2010) (presenting empirical evidence that federal district courts grant summary judgment in employment discrimination cases at a higher rate than any other type of civil case). Nothing in the McDonnell Douglas framework permits courts to weigh evidence when there is a

_____

[4](...continued)
discrimination and retaliation statutes. See, e.g., Allen, 240 S.W.3d at 820; Parker v. Warren County Util. Dist., 2 S.W.3d 170, 176 (Tenn. 1999); Newsom, 924 S.W.2d at 96; Bruce, 669 S.W.2d at 97. This overlap is consistent with one stated purpose of the THRA: to "[p]rovide for execution within Tennessee of the policies embodied in the federal Civil Rights Acts of 1964, 1968, and 1972, the Pregnancy Amendment of 1978, and the Age Discrimination in Employment Act of 1967, as amended." Tenn. Code Ann. § 4-21-101(a)(1) (2005).

Second, though not at issue in this case, the impact of the majority's analysis may extend farther than intended and raise issues pertinent to the trial of employment discrimination and retaliation cases. One example is the viability of an employer's motion for directed verdict at the conclusion of the proof, based on uncontradicted evidence that the employee was discharged for a legitimate, non-pretextual reason. The majority has determined that such a motion is inappropriate at the summary judgment phase, and the reasoning behind that decision may likewise undercut this kind of motion at trial. In other words, the elimination of McDonnell Douglas at the summary judgment stage may ultimately impact the viability of the framework at trial. We need not decide that issue today.

Third and finally, Tennessee is firmly a "right-to-work" state that recognizes the employment-at-will doctrine. See Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 899 (Tenn. 1992) ("this Court has no intention of creating unwarranted judicial exceptions to the general rule of employment at will"). At least with regard to retaliatory discharge claims like the ones involved here, this Court has cautioned that such claims are "very exceptional tort action[s]," Chism, 762 S.W.2d at 556, that should be "narrowly applied and not be permitted to consume the general rule," Stein v. Davidson Hotel Co., 945 S.W.2d 714, 717 n.3 (Tenn. 1997). The majority's decision today does not undermine the principle that retaliatory discharge claims are narrow exceptions to the employment-at-will doctrine.

genuine issue of material fact as to whether the employer acted out of a discriminatory or retaliatory motive.

Potential flaws in the way that courts apply the McDonnell Douglas framework provide no justification, however, for dispensing with that framework altogether. The United States Supreme Court has described the framework as a "procedural device," St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 521 (1993), that is "intended progressively to sharpen the inquiry into the elusive factual question of intentional discrimination," Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 255 n.8 (1981). The framework provides an orderly structure for managing the complexities of employment discrimination and retaliation cases, and trial courts have become comfortable with this framework after many years of usage. See Brown v. Packaging Corp. of Am., 338 F.3d 586, 597 (6th Cir. 2008) (Clay, J., concurring) (quoting Rowlett v. Anheuser-Busch, Inc., 832 F.2d 194, 200 (1st Cir. 1987)). Furthermore, summary judgment itself remains "a helpful device, in appropriate cases, for the just, speedy, and inexpensive resolution of litigation," Byrd v. Hall, 847 S.W.2d 208, 216 (Tenn. 1993), and "a screening device used to identify those cases that are not trial-worthy," Cornett, 77 Tenn. L. Rev. at 337. In this case we could have re-educated our lower courts on the proper application of the framework in the summary judgment context. Instead, the majority has simply written McDonnell Douglas out of our summary judgment law.

In conclusion, I believe the procedures that we set forth in Hannan are consistent with the McDonnell Douglas burden-shifting framework for resolving employment discrimination and retaliation cases at the summary judgment phase. The record in this case contains adequate evidence of pretext to affirm the judgment of the Court of Appeals. Instead of adhering to the framework that has guided Tennessee decisions in employment discrimination and retaliation law for over a quarter-century, however, the majority concludes that our law should move in a new direction. I do not believe that this change has been adequately justified or explained, and I believe that it will engender considerable uncertainty in this area of the law going forward. Therefore, I respectfully dissent.

I am authorized to state that Justice Koch concurs in this opinion.

_____
CORNELIA A. CLARK, JUSTICE