FILED

12/16/2019

Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
November 13, 2019 Session

## SCOTT FOLTZ v. BARNHART CRANE AND RIGGING COMPANY

**Appeal from the Circuit Court for Shelby County**
**No. CT-005005-15  Valerie L. Smith, Judge**

_____

### No. W2018-02198-COA-R3-CV

_____

Appellant/employee brought this retaliatory discharge case against Appellee, his former employer. Appellant alleged that he was fired in retaliation for claiming workers' compensation benefits. The trial court granted summary judgment in favor of the employer, finding that Appellant failed to meet his burden to show a causal connection between the filing of his workers' compensation claim and the termination of his employment. In the alternative, the trial court found that Appellee provided legitimate, non-discriminatory reasons for its decision to terminate Appellant's employment, and Appellant failed to meet his burden to show that the proffered reasons were pretext. Discerning no error, we affirm and remand.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
Affirmed and Remanded**

KENNY ARMSTRONG, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and ROBERT E. LEE DAVIES, SR. J., joined.

Roger A. Maness, Clarksville, Tennessee, and Marti Kaufman Monroe, Memphis, Tennessee, for the appellant, Scott Foltz.

Jennifer Shorb Hagerman and Gary S. Peeples, Memphis, Tennessee, for the appellee, Barnhart Crane and Rigging Company.

### OPINION

### I. Background

Appellant Scott Foltz began working for Appellee Barnhart Crane and Rigging

Company ("Barnhart") in April 2007. Mr. Foltz, who worked primarily as a small crane operator, received good yearly performance evaluations. However, in March 2013, Mr. Foltz was working on assignment at Valero, a Barnhart client. Mr. Foltz left the job site complaining that he was having difficulty breathing. He was admitted to the hospital, where his condition worsened. He was subsequently transferred to Methodist Hospital in Memphis, where he remained in ICU for almost three months after being diagnosed with acute respiratory distress syndrome. Mr. Foltz eventually recovered and returned to work at Barnhart in June of 2013. Barnhart reported Foltz's hospitalization to its workers' compensation carrier, Liberty Mutual. Following an investigation, Liberty Mutual denied Mr. Foltz's claim in June 2014, finding that Mr. Foltz's health condition was not the result of a workplace injury or exposure. In response to the denial of his claim, Mr. Foltz filed an action for workers' compensation benefits, which purportedly was still pending at the time of this appeal.

Barnhart administers drug tests to its employees. Depending on the job duty, Barnhart employees may be subject to four types of drug testing: (1) random DOT drug testing, which is administered by DISA Global Solutions ("DISA"); (2) random corporate (i.e., Barnhart-administered) drug testing; (3) site-specific (e.g. Valero-administered) drug testing; or (4) post-accident drug testing. While at Barnhart, Mr. Foltz submitted to several drug tests; prior to March 2015, he passed them all. On March 11, 2015, Mr. Foltz was randomly selected for DOT drug testing. He provided a urine sample, which tested positive for amphetamine (which is legal) and methamphetamine (which is illegal). DISA verified the results on March 20, 2015. Under Barnhart's Substance Abuse Policy, a positive result on a drug/alcohol test will result in disciplinary action up to and including termination of employment.

Mr. Foltz denied using illegal drugs and advised Barnhart that he thought the test was a false-positive. Mr. Foltz requested a split-sample of the urine he provided on March 11, 2015. Barnhart granted the request. Pending the re-testing, Barnhart removed Mr. Foltz from driving any commercial vehicles or operating machinery. Barnhart also agreed to work with Mr. Foltz to ascertain whether the positive result could be due to Mr. Foltz's prescribed medications.

On March 23, 2015, Mr. Foltz took another drug test, which was negative. On March 30, 2015, the split sample returned positive for amphetamines and methamphetamine. David Giddens, Barnhart's Safety Manger, relayed the results to Mr. Foltz, who continued to maintain that he had not used illegal drugs. Mr. Foltz provided information concerning his prescription medication. However, on April 24, 2015, DISA sent an email to Mr. Giddens, informing him that the positive urine test could not have been the result of legal medications because of the method of testing used by DISA.

Before DISA sent the foregoing email, Mr. Foltz was allowed to return to work at Valero. While there, he violated a Valero policy, which required a daily crane inspection.

Rather than completing a new report, Mr. Foltz changed the date of a report from the day before and gave it to Valero. There is no written report of this incident; however, Valero requested that Barnhart remove Mr. Foltz from the Valero worksite. At the time Barnhart removed Mr. Foltz from the Valero site, the results of the split sample drug test were pending. As such, Barnhart assigned Mr. Foltz to work in the "yard" at Barnhart's Memphis facility.

On April 28, 2015, James Odom, Barnhart's Memphis Branch Manager, and John Moore, Barnhart's Regional Director and Mr. Odom's direct supervisor, had a telephone conversation to discuss Mr. Foltz's employment. During that conversation, Mr. Odom made the decision to fire Mr. Foltz. On the morning of April 29, 2015, Mr. Odom informed Randy Lewis, Barnhart's Senior Vice President of Operations, that he was firing Foltz.

On April 29, 2015, Mr. Odom left for the Memphis yard around 11:00 a.m. to inform Mr. Foltz of his decision. When Mr. Odom got to the yard, he learned that Mr. Foltz had been involved in a minor accident that morning while mowing grass. Mr. Foltz received medical treatment and was released to return to work that afternoon. When he returned to Barnhart, Mr. Odom met with Mr. Foltz and informed him that his employment was terminated due to: (1) positive drug test confirmed by the split sample; and (2) his violation of the Valero policy concerning daily crane inspections. The crux of Mr. Foltz's lawsuit is that Barnhart fired him in retaliation for his filing the 2013 workers' compensation claim, *supra.* As discussed further below, Mr. Foltz does not dispute that Mr. Odom told him that he was being fired based on the drug screen and the Valero violation, but he further asserts that Mr. Odom stated that Mr. Foltz "had too many workers' compensation claims and that, 'You got hurt and you already got one claim.'" In the separation notice, Barnhart cited only the drug screen and safety violation but indicated that Mr. Foltz would be eligible for rehire "provided he has completed a substance abuse program, has a re-instated CDL, and can demonstrate competence."

After he was fired, Mr. Foltz filed for disability. It is undisputed that, in his application for disability benefits, Mr. Foltz averred that he has been physically unable to work since he was fired from Barnhart. Mr. Foltz's application for benefits was granted, and he is currently receiving disability benefits.

On December 4, 2015, Mr. Foltz filed his complaint for workers' compensation retaliatory discharge. Barnhart filed an answer denying liability. The parties proceeded to discovery. On February 22, 2018, Barnhart filed a motion for summary judgment. As grounds for its motion, Barnhart asserted: (1) Mr. Foltz could not make a *prima* facie case of workers' compensation retaliation; (2) Mr. Foltz could not show that Barnhart's legitimate, non-retaliatory reasons for terminating his employment were pretext; and (3) Mr. Foltz admitted that he was physically incapable of working as of the date of the

termination of his employment and, therefore, has no cognizable damages.[1]  Mr. Foltz opposed the motion.

Following a hearing on September 21, 2018, the trial court granted Barnhart's motion for summary judgment by order of November 15, 2018.  The trial court held that: (1) Mr. Foltz failed to satisfy the fourth *prima facie* element, i.e., a causal connection between his filing a workers' compensation claim and the termination of his employment; (2) in the alternative, allowing that Mr. Foltz satisfied his burden to establish a *prima facie* case, Barnhart provided legitimate, non-discriminatory reasons for its decision to terminate Mr. Foltz's employment, and Mr. Foltz failed to meet his burden to establish pretext.  Mr. Foltz appeals.

## II. Issue

The sole issue for review is whether the trial court erred in granting Barnhart's motion for summary judgment.

## III. Standard of Review

As the Tennessee Supreme Court has instructed:

> Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04.  We review a trial court's ruling on a motion for summary judgment *de novo*, without a presumption of correctness.  ***Bain v. Wells***, 936 S.W.2d 618, 622 (Tenn. 1997); *see also* ***Abshure v. Methodist Healthcare–Memphis Hosp.***, 325 S.W.3d 98, 103 (Tenn. 2010).  In doing so, we make a fresh determination of whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied.  ***Estate of Brown***, 402 S.W.3d 193, 198 (Tenn. 2013) (citing ***Hughes v. New Life Dev. Corp.***, 387 S.W.3d 453, 471 (Tenn. 2012)).

> \* \* \*

> [I]n Tennessee, as in the federal system, when the moving party does not bear the burden of proof at trial, the moving party may satisfy its burden of

---

[1] Although, at the trial level, Barnhart asserted that Mr. Foltz had no cognizable damages based on the averments he made in his disability claim, the trial court neither relied on this ground, nor made any findings concerning Mr. Foltz's cognizable damages.  On appeal, Barnhart raises Mr. Foltz's lack of damages as an alternative theory for summary judgment.  Because we affirm the trial court's grant of summary judgment on the grounds stated in its order, we pretermit discussion of the effect of Mr. Foltz's disability claim on his ability to make a *prima facie* case for retaliatory discharge.

production either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence at the summary judgment stage is insufficient to establish the nonmoving party's claim or defense. We reiterate that a moving party seeking summary judgment by attacking the nonmoving party's evidence must do more than make a conclusory assertion that summary judgment is appropriate on this basis. Rather, Tennessee Rule 56.03 requires the moving party to support its motion with "a separate concise statement of material facts as to which the moving party contends there is no genuine issue for trial." Tenn. R. Civ. P. 56.03. "Each fact is to be set forth in a separate, numbered paragraph and supported by a specific citation to the record." *Id.* When such a motion is made, any party opposing summary judgment must file a response to each fact set forth by the movant in the manner provided in Tennessee Rule 56.03. "[W]hen a motion for summary judgment is made [and] ... supported as provided in [Tennessee Rule 56]," to survive summary judgment, the nonmoving party "may not rest upon the mere allegations or denials of [its] pleading," but must respond, and by affidavits or one of the other means provided in Tennessee Rule 56, "set forth specific facts" at the summary judgment stage "showing that there is a genuine issue for trial." Tenn. R. Civ. P. 56.06. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586, 106 S.Ct. 1348. The nonmoving party must demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in favor of the nonmoving party. . . . [A]fter adequate time for discovery has been provided, summary judgment should be granted if the nonmoving party's evidence at the summary judgment stage is insufficient to establish the existence of a genuine issue of material fact for trial. Tenn. R. Civ. P. 56.04, 56.06.

*Rye v. Women's Care Cntr. of Memphis, MPLLC*, 477 S.W.3d 235, 250, 264-65 (Tenn. 2015).

## IV. Analysis

As explained by the Tennessee Supreme Court:

Workers' compensation laws have been in effect in the United States for more than a century. *See, e.g., N.Y. Cent. R.R. Co. v. White*, 243 U.S. 188, 197, 37 S.Ct. 247, 61 L.Ed. 667 (1917). These laws "were conceived as a means of providing prompt, dignified, and certain financial relief for workers who suffered employment-related injuries or diseases[,]" Joseph H. King, Jr., *The Exclusiveness of an Employee's Workers' Compensation Remedy Against His Employer*, 55 Tenn. L. Rev. 405, 406 (1988) (footnote

omitted) . . . .

Workers' compensation laws necessarily interact with the State's employment laws. Tennessee recognizes the employment-at-will doctrine as "the fundamental principle controlling the relationship between employers and employees." *Mason v. Seaton*, 942 S.W.2d 470, 474 (Tenn. 1997). Under this doctrine, either the employer or the employee may terminate the employment relationship with or without cause. *Hodges v. S.C. Toof & Co*., 833 S.W.2d 896, 899 (Tenn. 1992) (citing *Payne v. W. & Atl. R.R. Co*., 81 Tenn. 507, 509 (1884)). . . .

One exception to the employment-at-will doctrine is that an at-will employee may not be fired for taking an action encouraged by public policy. [*Williams v. City of Burns*, 465 S.W.3d 96, 108 (Tenn. 2015) (quoting *Mason*, 942 S.W.2d at 474)] (citing *Chism v. Mid–South Milling Co*., 762 S.W.2d 552, 556 (Tenn. 1988), *superseded by statute*, Tenn. Code Ann. § 50-1-304(g) (2014), as recognized in *Williams*, 465 S.W.3d at 109-10). Filing a workers' compensation claim is an action encouraged by public policy. *See Clanton* [*v. Cain–Sloan Co*., 677 S.W.2d [441,] at 444-45 (citing *Frampton v. Cent. Ind. Gas Co.*, 260 Ind. 249, 297 N.E.2d 425, 427 (1973)). Therefore, an employer may not lawfully discharge an employee for filing a workers' compensation claim. *Id.* at 445. An employee who believes that she has been fired for filing a workers' compensation claim may bring a claim for retaliatory discharge. *Id.* This cause of action was recognized "to enforce the duty of the employer, to secure the rights of the employee[,] and to carry out the intention of the [L]egislature." *Id.*

*Yardley v. Hospital Housekeeping Systems, LLC*, 470 S.W.3d 800, 803-804 (Tenn. 2015).

The elements of a common law *prima facie* case for a workers' compensation retaliatory discharge claim are: (1) the plaintiff was an employee of the defendant at the time of the injury; (2) the plaintiff made a claim against the defendant for workers' compensation benefits; (3) the defendant terminated the plaintiff's employment; and (4) the claim for workers' compensation benefits was a substantial factor in the employer's motivation to terminate the employee's employment. *Yardley*, 470 S.W.3d at 805 (citing *Anderson v. Standard Register Co.*, 857 S.W.2d 555, 558 (Tenn. 1993), *overruled on other grounds by Perkins v. Metro. Gov't of Nashville*, 380 S.W.3d 73 (Tenn. 2012)). Once the employee establishes each of the foregoing elements, the burden shifts to the employer to articulate a reason for the discharge that was legitimate and non-retaliatory. *Anderson v. Standard Register Co*., 857 S.W.2d at 558 (Tenn.1993).[2] If the employer

---

[2] In *Anderson*, the Tennessee Supreme Court adopted the burden-shifting framework of

provides a legitimate, non-retaliatory reason for the discharge, then the burden shifts back to the employee to prove that the employer's proffered reason was pretext. ***Smith v. Bridgestone/Firestone, Inc***., 2 S.W.3d 197, 200 (Tenn. Ct. App. 1999) (citing ***McDonnell Douglas Corp. v. Green***, 411 U.S. 72, 804 (1973)).

Here, Mr. Foltz established, and Barnhart does not dispute, the first three elements of his *prima facie* case—to wit, Mr. Foltz was a Barnhart employee; Mr. Foltz made a claim against Barnhart for workers' compensation benefits; Mr. Foltz's employment was terminated by Barnhart. Barnhart argues, however, that Mr. Foltz failed to meet the threshold burden of establishing a causal connection between his 2013 workers' compensation claim and the termination of his employment. In its November 15, 2018 order granting the motion for summary judgment, the trial court agreed with Barnhart:

> The Court finds that [Mr. Foltz] has failed to establish the fourth factor, namely, that [his] claim for workers' compensation benefits was a substantial factor in [Barnhart's] motivation to terminate [Mr. Foltz's] employment. There are not material facts sufficiently in dispute regarding [Barnhart's] motivation to terminate [Mr. Foltz's] employment.

An employee may establish a causal connection between a workers' compensation claim and a subsequent discharge through either direct evidence or compelling circumstantial evidence. ***Thomason v. Better–Bilt Aluminum Prods., Inc***., 831 S.W.2d 291, 293 (Tenn. Ct. App. 1992). Although courts have been hesitant to conclusively list what kind of evidence definitively establishes the requisite causal relationship, several courts have opined on what evidence is insufficient to create the link, including subjective beliefs and speculation. *See, e.g*., ***Chappell v. GTE Prods. Corp***., 803 F.2d 261, 268 (6th Cir.1989) (finding that a plaintiff's subjective beliefs and mere speculation are not sufficient to create a causal relationship); ***Vaughan v. Harvard Indus., Inc.***, 926 F. Supp. 1340, 1350 (W.D. Tenn. 1996) (holding that causation cannot be established simply because the plaintiff cannot think of any other reasons for the discharge), *overruled on other grounds by* ***Bratten v. SSI Servs., Inc.***, 185 F.3d 625 (6th Cir. 1999); ***Reed v. Alamo Rent–A–Car, Inc***., 4 S.W.3d 677, 685 (Tenn. Ct. App. 1999) ("[A] plaintiff may not prevail on a wrongful discharge claim merely by showing that a causal connection exists between her on-the-job injury and her subsequent discharge. Instead, the plaintiff must show that her claim for workers' compensation benefits, as opposed to her injury, was the true or substantial reason for her discharge" (citations omitted)).

---

***McDonnell Douglas Corp. v. Green***, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). ***Anderson***, 857 S.W.2d at 558. The Court later overruled the ***Anderson*** decision by holding that the ***McDonnell– Douglas*** burden-shifting framework does not apply at the summary judgment stage in Tennessee. ***Gossett v. Tractor Supply Co***., 320 S.W.3d 777, 785 (Tenn. 2010). The Tennessee General Assembly subsequently enacted Tenn. Code Ann. § 4-21-311(e), which superseded the Court's holding in ***Gossett*** and re-instated the burden-shifting framework.

Additionally, an employee may prove causal connection through circumstantial evidence in various forms, including: (1) "the employer's knowledge of the compensation claim"; (2) "the expression of a negative attitude by the employer towards an employee's injury"; (3) "the employer's failure to adhere to established company policy"; (4) "discriminatory treatment compared to similarly situated employees"; (5) "sudden and marked changes in an employee's performance evaluations after a workers' compensation claim"; or (6) "evidence tending to show that the stated reason for discharge was false." *Newcomb v. Kohler Co*., 222 S.W.3d 368, 391 (Tenn. Ct. App. 2006).

As evidence of a causal connection between his workers compensation claim and his subsequent discharge, Mr. Foltz asserts, in both his deposition and in his statement of undisputed material facts:

> 39. At that time,[i.e., when Mr. Odom informed Mr. Foltz of Barnhart's decision to terminate his employment], Odom told [Mr. Foltz] "that they was [sic] firing me because of the injury, that I couldn't have another one, then I had one and that he was also firing me for the drug test and for the incident at Valero."
> 40. Odom told [Mr. Foltz] that [Mr. Foltz] had too many workers' comp claims and that, "You got hurt and you already got one claim."

Mr. Foltz's assertions regarding Mr. Odom's statements do not provide clear evidence that the injury Mr. Odom referred to on April 29, 2015, i.e. "they was [sic] firing me **because of the injury**" (emphasis added), meant the 2013 injury that gave rise to Mr. Foltz's workers' compensation claim. Furthermore, Mr. Foltz's assertion that Mr. Odom told him that "[Mr. Foltz] had too many workers' comp claims," is not supported by the undisputed fact that Mr. Foltz filed only one workers' compensation claim in 2013. Although Tennessee law forbids termination of employment based on an employee filing or threatening to file a workers' compensation claim, *see* **Brandmire v. Kroger Co.**, 14 F. Supp. 3d 1079, 1083 (E.D. Tenn. 2014) (citing **Reed v. Alamo Rent-A-Car**, 4 S.W.3d at 685), there is nothing in the record to suggest that Mr. Foltz pursued (or threatened to pursue) a workers' compensation claim for the injury he sustained on April 29, 2015, the day he was fired. In fact, in an undisputed statement in his affidavit, Mr. Odom explained that "at no time during my conversation with [Mr. Foltz] on the afternoon of April 29, 2015, did [Mr. Foltz] state or intimate that he would be filing a workers' compensation claim for the incident involving the tractor, i.e., the April 29, 2015 injury]." *See further* **Hilliard v. Dolgencorp, LLC**, No. E2018-00312-COA-R3-CV, 2019 WL 1377263, *14 (Tenn. Ct. App. March 26, 2019) ("the plaintiff must show that her claim for workers' compensation benefits, **as opposed to her injury**, was the true or substantial reason for her discharge") (emphasis added). Accordingly, Mr. Foltz's burden is to show a causal connection between the 2013 workers' compensation claim and the 2015 termination of his employment. The fact that two years elapsed between these

- 8 -

events undermines the causal connection between them. Tennessee courts have held that a plaintiff failed to establish a causal connection in a retaliatory discharge case where more than a year has passed between the plaintiff's filing of a workers' compensation claim and the termination of his or her employment. *See, e.g., **Perry v. Young Touchstone***, 846 F. Supp. 2d 922, 931 (W.D. Tenn. 2012) ("This gap in time[, i.e., one year between plaintiff's workers' compensation claim and the termination of his employment,] is insufficient to establish causation.") (citing ***Crook v. Simpson Strong-Tie Co., Inc.***, Nos. 3:10–cv–00445, 2:10–cv–00099, 2:10–cv–00100, 2012 WL 123988, at *14 (M.D. Tenn. Jan. 17, 2012); ***Nickles v. Law Offices of Donald D. Zuccarello***, No. 3:06cv0702, 2008 WL 53689, at *6 (M.D. Tenn. Jan. 2, 2008)).

Assuming, as we must at the summary judgment stage, that Mr. Odom made the foregoing comments at the time he fired Mr. Foltz, and giving all reasonable inference in favor of Mr. Foltz, for the foregoing reasons, these statements do not establish a sufficient causal connection between Mr. Foltz's filing of his 2013 workers' compensation claim and the termination of his employment in 2015.

However, even if we allow, *arguendo*, that Mr. Foltz met his *prima facie* burden, Barnhart also met its burden to "articulate a reason for the discharge that was legitimate and non-retaliatory." *Anderson*, 857 S.W.2d at 558. In his affidavit, Mr. Odom stated that:

> 10. A drug test that [Mr. Foltz] took on March 11, 2015 came back positive for . . . methamphetamine.
>
> ***
>
> 14. The split sample also tested positive for . . . methamphetamine.
>
> ***
>
> 25. I made the decision to terminate [Mr. Foltz's] employment on April 28, 2015 because of (1) the positive drug tests and (2) the incident at Valero involving [Mr. Foltz's] violation of one of Valero's safety policies.

Mr. Odom's statements are not disputed. In fact, as set out in context above, in his affidavit, Mr. Foltz admits that Mr. Odom told Mr. Foltz that "he was also firing me for the drug test and for the incident at Valero." Although Mr. Foltz disputed that he used methamphetamine, he did not dispute that his March 11, 2015 urine sample and the split sample returned positive for methamphetamine. Furthermore, in his deposition, Mr. Foltz admitted to violating Valero's safety policy, to-wit:

- 9 -

Q. What is the daily inspection report?

A. You just do a daily of your crane and your inspection.

Q. Is is like a safety inspection?

A. Uh-huh (affirmative response).

*** 

Q. And there was an instance where Valero—someone with Valero asked you for a copy of your daily inspection. Is that right?

A. Right.

Q. And you weren't able to provide it. Is that right?

A. Yeah. I provided it. It was done in a hurry. I just put the—changed the date because [Valero] was rushing us to get to it . . . . I did my inspection. I just didn't [have] it all finished yet. So I changed the date and handed it to him.

Q. So you used the inspection from the day before? Is that right?

A. Yeah. Just changed the date. Yeah.

In view of the foregoing undisputed testimony, Barnhart met its burden to show legitimate and non-retaliatory reasons for its decision to terminate Mr. Foltz's employment. Under the burden-shifting analysis, discussed *supra*, the burden then shifted back to Mr. Foltz to show that the reasons given by Barnhart were pretext. Concerning whether Mr. Foltz met this burden, the trial court's November 15, 2018 order states:

6. the Court further finds that even if the Court had determined that [Mr. Foltz] had established a prima facie case, [Barnhart] has also satisfied its burden of offering one or more legitimate non-discriminatory reasons for [Mr. Foltz's] termination, and [Mr. Foltz] has failed to establish pretext.
7. [Mr. Foltz] central argument regarding pretext is that there should not have been a delay in the termination of [Mr. Foltz] in accordance with [Barnhart's] own policies.
8. The Court does not find that argument to be persuasive.
9. The Court finds there were two reasons that [Barnhart] terminated [Mr. Foltz]: (1) the positive drug screen and then the second analysis of the same sample taken, which is referred to as a split screen or split sample, and, (2)

the safety issue that occurred at Valero . . . . The Court finds that both of these facts are not genuinely in dispute, which establishes that [Barnhart's] reasons were not pretextual.

From our review, we agree with the trial court's findings. To establish pretext, a plaintiff may show "that the Company's reasons have no basis in fact, or if they have a basis in fact, by showing that they were not really factors motivating the discharge, or, if they were factors, by showing that they were jointly insufficient to motivate the discharge." ***Davis v. Reliance Elec. Indus. Co.,*** 104 S.W.3d 57, 63 (Tenn. Ct. App. 2002) (citing ***Moore v. Nashville Elec. Power Bd.***, 72 S.W.3d 643, 652 (Tenn.Ct.App.2001)). As noted by the trial court, Mr. Foltz's pretext argument rests on his assertion that Barnhart failed to follow its own internal policies in regard to the positive drug screens. It is true that Barnhart's substance abuse policy allows for immediate termination or suspension without pay for two weeks while the employee attends an approved substance abuse program. Barnhart chose a more lenient approach in Mr. Foltz's case. As discussed above, Mr. Foltz maintained that his drug test was a false positive, and he requested a split sample. Barnhart allowed Mr. Foltz to remain in its employ pending the second analysis. The flaw in Mr. Foltz's pretext argument is that more lenient treatment by an employer does not militate toward a showing of pretext and, in fact, usually supports the opposite conclusion. We further note the undisputed fact that, in the separation notice, Barnhart offered Mr. Foltz the opportunity to return to work "provided he has completed a substance abuse program. . . ." The fact that Barnhart's offer of reinstatement is premised, *inter alia¸* on the condition that Mr. Foltz complete a substance abuse program, clearly indicates that Mr. Foltz's positive drug test was "the true or substantial reason for [his] discharge." ***Hilliard***, 2019 WL 1377263, at*14. From the undisputed facts, Mr. Foltz failed to meet his burden to show that the legitimate reasons proffered by Barnhart as grounds for its decision to terminate his employment were pretext.

## V. Conclusion

For the foregoing reasons, we affirm the trial court's order. The case is remanded for such further proceedings as may be necessary and are consistent with this opinion. Costs of the appeal are assessed against the Appellant, Scott Foltz, for all of which execution may issue if necessary.

_____
KENNY ARMSTRONG, JUDGE